Appellants-plaintiffs Frank J. Hales and Iva Jean P. Hales appeal the order entered by the trial court compelling them to arbitrate their claims against appellee-defendant ProEquities, Inc., an investment company. We reverse and remand.
In July 1994, Wayne Gregory, an agent of ProEquities, convinced the Haleses to put their life savings of $430,000 in an investment account with ProEquities. On July 20, 1994, Frank Hales, alone, signed a "New Account Application," an individual retirement account ("IRA") application, and an IRA beneficiary designation form. The contractual documents include a pre-dispute arbitration agreement.
On August 5, 1999, in the Marshall County Circuit Court, the Haleses sued ProEquities and Gregory[1] for conversion, breach of contract, fraud, breach of fiduciary duty, and willfulness and wantonness. Specifically, the Haleses alleged that, following the defendants' advice to "re-invest $150,000 in InsNet, Inc. stock," and to invest $60,000 in "a viatical settlement contract issued by The Old Line Life Insurance Company of America," the Haleses instructed the defendants to make these investments on their behalf. The Haleses alleged that the defendants had not made these investments but had converted the $210,000.
On September 10, 1999, defendant Gregory moved to dismiss the complaint or, in the alternative, to transfer the case to Madison County. On September 14, 1999, ProEquities moved to dismiss the complaint on the ground of improper venue. *Page 102 
On November 2, 1999, the Marshall County Circuit Court heard arguments by counsel on the motions to dismiss. On November 12, 1999, the Marshall County Circuit Court granted the motion to transfer and transferred the case to the Madison County Circuit Court.
On November 22, 1999, defendant Gregory moved for a stay of the case pending his appeal of his criminal convictions. The trial court purported to grant the motion.[2] On November 2, 2000, the Haleses' attorney noticed the deposition of Frank Hales for December 15, 2000. On December 5, 2000, the Haleses' attorney re-noticed the deposition of Frank Hales for January 16, 2001. The Haleses canceled the January 16, 2001 deposition at the request of the attorney for ProEquities in order for the attorneys for both parties to discuss a possible conflict of interest on the part of one of the Haleses' attorneys and to discuss a possible settlement of the case.
On January 31, 2001, the trial court ordered the parties to mediate the dispute and to report to the court the status of mediation by March 1, 2001. The trial court placed the case on its administrative docket while mediation occurred. The court further ordered that, if mediation failed to resolve the case, the case would be set for trial within 60 days. On March 27, 2001, ProEquities waived a possible conflict of interest affecting one of the Haleses' attorneys in his representation of the Haleses.
On May 24, 2001, the Haleses' attorney re-noticed the deposition of Frank Hales for June 6, 2001. On May 25, 2001, ProEquities noticed the deposition of Frank Hales for June 6, 2001 and included a request that he produce certain documents at his deposition. On May 25, 2001, ProEquities also noticed the deposition of Iva Hales for June 6, 2001 and included a request that she produce certain documents at her deposition. The parties canceled the Haleses' depositions to explore a settlement of the case. On May 31, 2001, ProEquities answered the complaint and asserted various affirmative defenses.
On June 20, 2001, the Haleses amended their complaint to assert claims against ProEquities for negligent and wanton hiring, training, monitoring, supervision, and retention, and for negligent and wanton failure to adopt, to promulgate, or to enforce policies and procedures in accordance with the "Alabama Securities Commission Code." On June 22, 2001, the Haleses served ProEquities with interrogatories and requests for production.
On July 10, 2001, the Haleses' attorney re-noticed the deposition of Frank Hales for August 13, 2001. On July 19, 2001, ProEquities re-noticed the deposition of Frank Hales for August 13, 2001 and included a request that he produce certain documents at his deposition. On July 19, 2001, ProEquities re-noticed the deposition of Iva Hales for August 13, 2001 and included a request that she produce certain documents at her deposition. On July 25, 2001, ProEquities answered the amended complaint and again asserted various affirmative defenses. *Page 103 
On August 13, 2001, the parties deposed Frank Hales. Thereafter, the Haleses filed a second amended complaint substituting McDowell Enterprises stock for InsNet, Inc., stock. In a letter dated September 6, 2001, defendant Gregory told the trial court that, because of his incarceration, he could not attend the trial on the scheduled date, apparently during the first week of November 2001.[3] He asked the court to delay the trial until he could obtain his records and prepare for trial.
On October 5, 2001, ProEquities answered the second amended complaint and again asserted various affirmative defenses. Forthe first time, ProEquities moved to compel the Haleses to submittheir claims to arbitration pursuant to the pre-dispute arbitration agreement signed by Frank Hales and moved to stay the Haleses' action pending the arbitration. In its motion to compel arbitration, ProEquities claimed that the motion was timely because, ProEquities said, it had learned for the first time at Frank Hales's deposition that the Haleses' claims "relate[d] directly to plaintiff's account with ProEquities, Inc., which was opened in July 1994." ProEquities also filed evidentiary materials and a supporting brief.
On October 15, 2001, ProEquities filed a supplemental brief in support of its motion to compel arbitration. On October 29, 2001, the Haleses filed a memorandum and evidentiary materials in opposition to the motion to compel arbitration. The Haleses contended that ProEquities had waived its right to arbitration by waiting over two years to move to compel arbitration and by failing to assert arbitration as an affirmative defense in its initial answer to the complaint.
On November 6, 2001, the trial court heard arguments by counsel on the motion to compel arbitration. Thereafter, both ProEquities and the Haleses filed affidavits by their respective attorneys. The attorney for ProEquities states that over a two-year period he had engaged in discussions with one of the Haleses' attorneys about a possible conflict of interest in his representation of the Haleses. He states that in January and February 2001 he engaged in settlement discussions with one of the attorneys representing the Haleses. He advised the Haleses' attorneys that ProEquities had agreed to waive the possible conflict affecting the one attorney in his representation of the Haleses. One of the Haleses' attorneys states that the Haleses, through their attorneys, had expended "a great deal of time, money, and effort in preparing [the Haleses'] case for trial before a jury." The attorney specifically states that, during the pendency of the case, he and an attorney for ProEquities engaged in discussions about settling the Haleses' claims against ProEquities. "At no time during any of these discussions was arbitration mentioned.Arbitration was first raised over two years after the suit was filed and one month before the case was to be tried." On January 11, 2002, the trial court rejected the Haleses' assertion that ProEquities had waived its right to compel arbitration and granted the motion to compel arbitration.
On appeal, the Haleses raise one issue:
 "[W]hether the trial court erred by granting the motion to compel arbitration . . . given that ProEquities actively participated in the litigation for more than two years before moving to compel arbitration and given that ProEquities *Page 104 
failed to raise the affirmative defense of arbitration until more than two years after ProEquities served and filed its initial Answer."
The Haleses' contend that they were prejudiced by the delay of ProEquities in invoking the arbitration agreement. They contend that they incurred considerable litigation expenses in preparing their case for trial. The expenses include the cost of videotaping the deposition of Frank Hales, whose health is failing, for use at trial.
 Standard of Review
The parties have invoked two different arguably applicable standards of review. First, "the standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson,749 So.2d 441, 446 (Ala. 1999). Accord Lewis v. Conseco Fin. Corp.,848 So.2d 920, 922 (Ala. 2002) ("[t]his Court reviews de novo the [grant] or denial of a motion to compel arbitration"). Second, "[o]rdinarily, we review issues regarding waiver of arbitrability under an abuse-of-discretion standard." Karl StorzEndoscopy-America, Inc. v. Integrated Med. Sys., Inc.,808 So.2d 999, 1008 (Ala. 2001). However, in Karl StorzEndoscopy-America, because the defense of waiver was submitted entirely on documentary evidence, we conducted a de novo review of that defense. Id.
Because of the dichotomy in the two standards of review, we will clarify the standard of review applicable to trial court rulings on motions to compel arbitration opposed on the ground of waiver. The abuse-of-discretion standard for reviewing the acceptance or rejection of the ground of waiver in a ruling by the trial court on a motion to compel arbitration can be traced to Ex parte McKinney, 515 So.2d 693 (Ala. 1987), which denied a petition for a writ of mandamus. In McKinney, we stated "`[m]andamus itself is an extraordinary remedy, which should be granted only when there is clear showing that the trial court abused its discretion.'" 515 So.2d at 696 (quoting Ex parteLang, 500 So.2d 3, 5 (Ala. 1986)). However, we no longer review either the grant or the denial of a motion to compel arbitration by petition for a writ of mandamus. Rather, Rule 4(d), Ala. R.App. P., effective on October 1, 2001, authorizes an appeal of an order either granting or denying a motion to compel arbitration. Thus, the mandamus abuse-of-discretion standard for reviewing the grant or denial of a motion to compel arbitration opposed on the ground of waiver is no longer applicable and is inconsistent with our de novo standard of review in appeals from the grant or denial of a motion to compel arbitration. Exparte Roberson, supra.
Moreover, "a finding that a party has waived its right to arbitration is a legal conclusion." Price v. Drexel BurnhamLambert, Inc., 791 F.2d 1156, 1159 (5th Cir. 1986). AccordMenorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218
(1st Cir. 1995); MidAmerica Fed. Sav. Loan Ass'n v.Shearson/American Exp., Inc., 886 F.2d 1249 (10th Cir. 1989);D.M. Ward Constr. Co. v. Electric Corp. of Kansas City,15 Kan.App.2d 114, 803 P.2d 593 (1990); In re Bruce Terminix Co.,988 S.W.2d 702 (Tex. 1998); Chandler v. Blue Cross Blue Shieldof Utah, 833 P.2d 356 (Utah 1992); Steele v. Lundgren,85 Wash.App. 845, 935 P.2d 671 (1997). "Legal conclusions are never accorded a presumption of correctness on appellate review." Exparte Cain, 838 So.2d 1020, 1026 (Ala. 2002). Accord Ex partePerkins, 646 So.2d 46, 47 (Ala. 1994). *Page 105 
Additionally, in most cases, the trial court grants or denies a motion to compel arbitration or decides the waiver of the right to compel arbitration on the submission of written evidentiary materials without ore tenus testimony. Therefore, "the trial court is in no better — or different — position than this Court to decide the legal significance of a party's conduct." KarlStorz Endoscopy-America, 808 So.2d at 1008. Accordingly, absent the consideration of disputed ore tenus evidence, the grant or denial of a motion to compel arbitration opposed on the ground of waiver is subject to a de novo review on appeal. Id. AccordRestoration Pres. Masonry, Inc. v. Grove Europe, Ltd.,325 F.3d 54 (1st Cir. 2003); Thyssen, Inc. v. Calypso Shipping Corp.,S.A., 310 F.3d 102 (2d Cir. 2002); Fraser v. Merrill LynchPierce, Fenner Smith, Inc., 817 F.2d 250 (4th Cir. 1987);Gulf Guaranty Life Ins. Co. v. Connecticut Gen. Life Ins. Co.,304 F.3d 476 (5th Cir. 2002); Frye v. Paine, Webber, Jackson Curtis, Inc., 877 F.2d 396 (5th Cir. 1989); Iowa Grain Co. v.Brown, 171 F.3d 504 (7th Cir. 1999); Dumont v. SaskatchewanGov't Ins., 258 F.3d 880 (8th Cir. 2001); Fisher v. A.G. BeckerParibas, Inc., 791 F.2d 691 (9th Cir. 1986).
 Law and Analysis
"[A]rbitration agreements [are] as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801,18 L.Ed.2d 1270 (1967). "`[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"AT T Techs., Inc. v. Communications Workers of America,475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quotingUnited Steelworkers v. Warrior Gulf Navig. Co., 363 U.S. 574,582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).
Waiver is a "defense to arbitrability." Moses H. Cone Mem'lHosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.Ct. 927,74 L.Ed.2d 765 (1983). Accord Ex parte Colquitt,808 So.2d 1018, 1022 (Ala. 2001), and Big Valley Home Ctr., Inc. v.Mullican, 774 So.2d 558 (Ala. 2000).
 "It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897,899 (Ala. 1995). Accord Ex parte Allen, 798 So.2d 668 (Ala. 2001), and Lee v. YES of Russellville, Inc., 784 So.2d 1022
(Ala. 2000).
"Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver." Price, 791 F.2d at 1162 (footnote omitted). "Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice." Frye, 877 F.2d at 399.
"Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the *Page 106 
types of litigation expenses that arbitration was designed to alleviate." Morewitz v. West of England Ship Owners Mut.Protection Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995). "Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration." Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696
n. 7 (2d Cir. 1968). However, "[a] defendant has the right to have the proper venue established before it has any obligation
to move to compel arbitration." Thompson v. Skipper Real EstateCo., 729 So.2d 287, 292 (Ala. 1999). Accord Ex parte Allen, 798 So.2d at 673.
In our de novo review, we must determine whether ProEquities substantially invoked the judicial process so as to prejudice the Haleses. We note, first, that the participation of ProEquities in the proceedings to dismiss the action or to transfer the action to a proper venue was not an invocation of the judicial process by ProEquities and was not a waiver of the right to compel arbitration. Ex parte Allen and Thompson, supra.
ProEquities claimed below and claims before us that it first learned that the Haleses' claims "involved the very ProEquities account which contained the arbitration agreement" during Frank Hales's deposition. ProEquities argues that it had no reason to invoke the arbitration agreement until it learned that the Haleses' claims related to their ProEquities account and that, therefore, because ProEquities did not sooner know that the Haleses' claims related to their brokerage account with ProEquities, ProEquities did not waive its right to arbitration by failing to move to compel arbitration until one month before the trial date.
In their complaint the Haleses alleged that the
 "defendants advised the plaintiffs to re-invest $150,000 in InsNet, Inc. stock. Gregory represented to the plaintiffs that InsNet stock was a good sound investment and would give the plaintiffs a better return."
The Haleses alleged that they "relied on the advice and representations of ProEquities and its agents" to invest their life savings with ProEquities. The answer to the complaint filed by ProEquities reveals that ProEquities understood that the Haleses' claims against ProEquities related to their brokerage account with ProEquities. In pertinent part, the answer reads:
 "ProEquities states that the transactions alleged were voluntarily undertaken, that the plaintiffs had the opportunity, if not the obligation, to read all documents presented to or signed by the plaintiffs, that the terms of the investments purchased were disclosed to the plaintiffs, that the plaintiffs knowingly entered into the transactions, having either understood the transactions or having failed to avail themselves of the opportunity to understand the transactions, and that some or all of the transactions are now complete, paid and satisfied."
Furthermore, ProEquities did not cite to the trial court and does not cite to this Court any case holding that a defendant's failure to understand the claims asserted against it by a plaintiff excuses that defendant's over-two-year delay in asserting its right to compel arbitration. Thus, this argument is unavailing.
The failure of ProEquities to object to the trial setting; the over-two-year delay by ProEquities in moving to compel arbitration after the Haleses first filed suit; the participation of ProEquities in discovery by noticing the depositions of the Haleses, by requesting the production of documents by the Haleses at their depositions, *Page 107 
and by deposing plaintiff Frank Hales; and the two-month delay by ProEquities in moving to compel arbitration after Frank Hales's deposition; together evidence "an intention [by ProEquities] to abandon the right [to compel arbitration] in favor of the judicial process." Companion Life Ins. Co., 670 So.2d at 899. Moreover, the failure of ProEquities to object to the trial setting or to move to compel arbitration until one month before trial required the Haleses to proceed with the preparation of their case for the jury trial. The actions and inactions by ProEquities caused the Haleses to expend moneys and efforts to prepare for trial and, thus, prejudiced the Haleses. Therefore, ProEquities waived its right to compel the Haleses to arbitrate their claims. Accordingly, we reverse the order of the trial court compelling the Haleses to arbitrate their claims against ProEquities and we remand this case for entry of an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
BROWN, HARWOOD, and STUART, JJ., concur.
LYONS, J., concurs specially.
MOORE, C.J., and HOUSTON, J., concur in the result.
SEE and WOODALL, JJ., dissent.
[1] Gregory is not a party to this appeal. The Haleses' complaint claimed likewise against other defendants who are not parties to this appeal.
[2] The motion for a stay contains a stamp with the words "Granted" and "Denied" with a place beside each for a check mark and a line with the word "Judge" beside the line. The trial judge checked "Granted" and signed her name. However, the record does not show that the order purporting to grant the stay was filed in the clerk's office. The case action summary does not contain any entry for the order purporting to grant the stay. Thus, the trial court did not effectuate a stay of the case. Rule 58, Ala. R. Civ. P., and Doe v. Markham, 776 So.2d 757 (Ala. 2000).
[3] The only indications of the trial date in the record are the November 19, 2001 affidavit by one of the Haleses' attorneys Randy Beard and the October 5, 2001 motion by ProEquities to compel arbitration. The affidavit swears that the motion to compel preceded the trial date by only one month.