966 So.2d 273 (2006)
RYAN'S FAMILY STEAKHOUSE, INC., d/b/a Fire Mountain Restaurant
v.
Donna KILPATRIC.
2040557.
Court of Civil Appeals of Alabama.
December 15, 2006.
*277 Joseph H. Driver and Tom S. Roper of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellant.
J. Barton Warren of Warren & Simpson, P.C., Huntsville, for appellee.
PER CURIAM.
The defendant, Ryan's Family Steakhouse, Inc., d/b/a Fire Mountain Restaurant ("Ryan's"), appeals the trial court's order denying Ryan's motion to compel the plaintiff, Donna Kilpatric, to arbitrate her claims against Ryan's. We reverse and remand.
Kilpatric was an employee of Ryan's. When Kilpatric applied for employment with Ryan's, she signed an arbitration agreement with Employment Dispute Services, Inc. ("EDSI"). The arbitration agreement stated that Ryan's and EDSI had entered into a contract "to arbitrate and resolve any and all employment-related disputes between [Ryan's] employees (and job applicants) and [Ryan's] under EDSI's program." The arbitration agreement stated that "employment-related disputes *278 between [Kilpatric] and [Ryan's] shall be resolved through arbitration." The agreement also stipulated that Ryan's was a third-party beneficiary of the agreement between Kilpatric and EDSI and that Kilpatric was a third-party beneficiary of the contract between Ryan's and EDSI. At the time Kilpatric signed the arbitration agreement, she received a copy of the rules and regulations governing the arbitration agreement.
On May 18, 2004, Kilpatric sued Ryan's, seeking workers' compensation benefits and asserting a claim of retaliatory discharge. On June 24, 2004, Ryan's answered Kilpatric's complaint and began conducting initial discovery.
On August 20, 2004, Ryan's filed a motion to stay the proceedings and to compel arbitration of Kilpatric's claims pursuant to the arbitration agreement between Kilpatric and EDSI. On January 26, 2005, the trial court denied Ryan's motion to compel arbitration of Kilpatric's claims. The trial court's order stated, in pertinent part:
"The Court has independently reviewed the arbitration agreement and finds the arbitration agreement to be unconscionable, patently biased and grossly favorable to [Ryan's] having overwhelming bargaining power. . . . Additionally, the Court finds [Ryan's] has waived its right to seek arbitration by unduly delaying filing its motion to compel arbitration until after it obtained all discovery from [Kilpatric] and then, after receiving such discovery, making a decision to avoid litigation in State Court by compelling arbitration."
Ryan's timely appealed the denial of its motion to compel arbitration to the supreme court. See Rule 4(d), Ala. R.App. P. ("An order granting or denying a motion to compel arbitration is appealable as a matter of right. . . ."). The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975. This court heard oral arguments on this case on April 4, 2006.

Standard of Review
"We review de novo the denial of a motion to compel arbitration. Springhill Nursing Homes, Inc. v. McCurdy, 898 So.2d 694, 696 (Ala.2004). The party seeking to compel arbitration has the burden of proving both that a contract calling for arbitration exists and that the contract evidences a transaction affecting interstate commerce. McCurdy, 898 So.2d at 696. Once this prima facie showing has been made, the burden then shifts to the party opposing arbitration to present substantial evidence indicating that the supposed arbitration agreement is either invalid or inapplicable to the dispute as to which arbitration is being sought. Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1081 (Ala.2004)."
Patriot Mfg., Inc. v. Jackson, 929 So.2d 997, 1000 (Ala.2005).

Analysis
The appeal presents these issues: (1) whether the arbitration agreement is valid; (2) whether the arbitration agreement calls for the arbitration of workers' compensation claims; (3) whether Ryan's waived its right to compel arbitration; (4) whether the arbitration agreement is unconscionable; and (5) whether general public-policy arguments against the arbitration of workers' compensation claims foreclose Ryan's from compelling the arbitration of Kilpatric's workers' compensation claim. The trial court denied Ryan's motion to compel arbitration on the grounds of waiver and unconscionability. Subject to certain exceptions that are not present in this case, this court may affirm a trial court's judgment on any valid legal ground, regardless of whether it was considered *279 or rejected by the trial court. Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003);[1] and Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000). Therefore, in addition to waiver and unconscionability, we will consider the other issues raised by Kilpatric as arguments for affirmance of the trial court's order.

I. Existence of a Valid Arbitration Agreement
"In reviewing arbitration provisions, we apply general state-law contract principles." Capitol Chevrolet & Imports, Inc. v. Payne, 876 So.2d 1106, 1109 (Ala. 2003).
"A contract, lacking in mutuality, is unenforceable, because there is an absence of consideration moving, from one party to the other, Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953), but when the promise of each party is legally sufficient consideration for the other's promise, there is no lack of mutuality, Lindner v. Mid-Continent Petroleum Corp., 221 Ark. 241, 252 S.W.2d 631 [(1952)].
". . . .
". . . So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract."
Marcrum v. Embry, 291 Ala. 400, 403, 282 So.2d 49, 51 (1973). "`[A] promise which is merely illusory, such as an agreement to buy only what the promisor may choose to buy, falls short of being a consideration for the promisee's undertaking, and neither is bound.'" Marcrum, 291 Ala. at 405, 282 So.2d at 53 (quoting Lindner v. Mid-Continent Petroleum Corp., 221 Ark. 241, 244, 252 S.W.2d 631, 632 (1952))
Kilpatric argues that the arbitration agreement between her and EDSI is unenforceable because, Kilpatric says, the arbitration agreement lacks mutuality of obligation between Kilpatric and EDSI and, therefore, lacks consideration. In support of this argument, Kilpatric relies on Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753 (7th Cir.2001). In Penn, the plaintiff employee signed an arbitration agreement with EDSI stating that employment-related disputes between the employee and Ryan's would be resolved through arbitration. 269 F.3d at 755. Applying Indiana contract law, the United States Court of Appeals for the Seventh Circuit concluded that the arbitration agreement between the employee and EDSI lacked consideration in part because the agreement contained "only an unascertainable, illusory promise on the part of *280 EDS[I]." 269 F.3d at 759. The court in Penn noted that, although the employee's obligations under the arbitration agreement were specific, EDSI's rules governing arbitration gave EDSI "the sole, unilateral discretion to modify or amend" those rules. 269 F.3d at 759. The court found that the arbitration agreement was "hopelessly vague and uncertain as to the obligation EDS[I] ha[d] undertaken." 269 F.3d at 760.
Kilpatric argues that the arbitration agreement in the present case, like the agreement in Penn, lacks mutuality of obligation and, therefore, lacks consideration. However, as Ryan's notes, the arbitration agreement in the present case is different from the agreement in Penn. In Penn, EDSI retained the right to change the arbitration rules at any time, making EDSI's obligations "unascertainable" and "illusory." 269 F.3d at 759. The rules governing the arbitration agreement between Kilpatric and EDSI state:
"These Rules and Procedures may be modified and amended from time to time by EDSI. However, in the event these Rules and Procedures are modified after a Claimant has signed an Agreement, the claimant shall have the option to have his or her claim adjudicated under the Rules and Procedures that were in effect on the date the Agreement was signed or the Rules and Procedures that are in effect on the date their claim is filed with EDSI."
(Emphasis added.) This provision is identical to a provision contained in the rules governing the EDSI arbitration agreement signed by a plaintiff employee in Gardner v. Ryan's, (No. 1:01CV00030, October 31, 2001) (W.D.Va.2001) (not reported in F.Supp.2d). In Gardner, the federal district court noted that the rules of the arbitration agreement in Penn did not contain this provision allowing the employee claimant to choose which set of arbitration rules would govern the arbitration process. Id. The district court concluded that EDSI's promise to provide an arbitration forum governed by a particular set of rules was not illusory or uncertain, unlike EDSI's promise in Penn. Id. The Gardner court therefore concluded that the arbitration agreement between the plaintiff employee and EDSI was enforceable. Id.
The arbitration agreement in the present case contains mutuality of obligation and adequate consideration between EDSI and Kilpatric. Unlike the arbitration agreement in Penn, which allowed EDSI the discretion to rewrite the rules of arbitration, the present arbitration agreement allows Kilpatric the option of selecting the set of arbitration rules and procedures in place at the time the arbitration agreement was executed. The arbitration agreement provides a forum for the resolution of disputes between Kilpatric and Ryan's, and the arbitration rules and procedures in place at the time of execution provide a comprehensive framework governing the arbitration process. Unlike the promise in Penn, EDSI's promise to provide an arbitration forum with ascertainable rules and procedures is not illusory. Therefore, Kilpatric's argument that the arbitration agreement is void for lack of mutual obligation fails.
At oral argument, counsel for Kilpatric cited Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370 (6th Cir.2005), in support of her argument that the arbitration agreement in the present case lacks consideration. The court in Walker concluded that the EDSI arbitration agreements in that case lacked adequate consideration. Id. at 379. The Walker court noted, however, that the plaintiffs' arbitration agreements in that case did not incorporate the provision allowing an employee claimant the right to enforce the *281 rules and procedures in effect at the time the agreement was executed. Id. The arbitration agreements at issue in Walker appear to be, in all material respects, the same as the arbitration agreement in Penn, which we have already distinguished from the arbitration agreement in the present case.
II. Scope of the Arbitration Agreement
Kilpatric also argues that, even if there is a valid arbitration agreement between her and EDSI, the agreement does not call for the arbitration of workers' compensation claims. Kilpatric cites language in the arbitration agreement stating that the agreement "does not restrict [Kilpatric] from filing a claim or charge with any state or federal agency," including a "state workers' compensation commission, where applicable." The Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, does not provide for a "state workers' compensation commission." Kilpatric contends that, although Alabama does not have a workers' compensation commission, the provision excluding from arbitration claims filed with a "state workers' compensation commission" should be read as excluding from arbitration all workers' compensation claims, regardless of whether those claims are filed with a commission.
"`It is well settled that the words of a contract are to be given their ordinary meaning and that the intention of the parties is to be derived, if possible, from the provisions of the contract itself. Where a contract, by its terms, is plain and free from ambiguity, there is no room for construction and the contract must be enforced as written.'" Peerless Landfill Co. v. Haleyville Solid Waste Disposal Auth., 941 So.2d 312, 316 (Ala.Civ.App. 2006) (quoting Austin Apparel, Inc. v. Bank of Prattville, 872 So.2d 158, 165 (Ala. Civ.App.2003)) (citations omitted). The plain language of the arbitration agreement excludes from arbitration claims filed with a "state workers' compensation commission, where applicable." (Emphasis added.) In the present case, this exclusion is not applicable because Alabama does not have a workers' compensation commission. We cannot conclude otherwise without ignoring the plain language of the arbitration agreement.
Kilpatric also argues that the arbitration agreement, if valid, only applies to claims that would otherwise be tried by a jury and does not apply to claims that would otherwise be tried by a judge only. Typically, a workers' compensation claim is tried before a circuit court judge without a jury. See § 25-5-81, Ala.Code 1975; and 2 Terry A. Moore, Alabama Workers' Compensation § 24:38 (1998). Arguing that the arbitration agreement only applies to claims that would be tried by a jury in state or federal court, Kilpatric maintains that her workers' compensation claim is not subject to the arbitration agreement. In support of her argument, Kilpatric cites the following provision of the arbitration agreement: "[KILPATRIC] WAIVE[S] ANY RIGHT ARISING UNDER EITHER STATE OR FEDERAL LAW TO HAVE [HER] CLAIM RESOLVED BY A JURY. RATHER, ANY CLAIM [KILPATRIC] MAY FILE WILL BE FINALLY RESOLVED BY A PANEL OF THREE NEUTRAL ARBITRATORS." (Capitalization and bold typeface original.)
However, the arbitration agreement also states:
"[Ryan's] has entered into an agreement with [EDSI] to arbitrate and resolve any and all employment-related disputes between [Ryan's] employees (and job applicants) and [Ryan's] under EDSI's program. . . .

*282 " . . . This Agreement does not restrict [Kilpatric] from filing a claim or charge with any state or federal agency. . . .
". . . .
". . . Except as to claims or charges finally resolved within a state or federal agency, [Kilpatric] and [Ryan's] agree to use EDSI to resolve legal claims concerning [Kilpatric] that either party would otherwise bring in state or federal court. . . .
". . . .
". . . Any employment-related dispute between [Ryan's], [Kilpatric] and/or other signatories which would otherwise be brought in state or federal court will be brought ONLY in the EDSI arbitration forum and under EDSI Rules and Procedures."
(Capitalization and bold typeface original.)
The provision of the arbitration agreement that Kilpatric cites as limiting arbitration only to claims that would otherwise be tried by a jury merely states that Kilpatric waives her right to a trial by jury; it does not state that she waives only her right to a trial by jury. The arbitration agreement indicates an intention to arbitrate "any and all" employment-related disputes with the specific exception of claims or charges filed with, and finally resolved by, a state or federal agency. However, the agreement does not provide an exclusion from arbitration for claims tried by bench trial, such as a typical workers' compensation claim. The arbitration agreement states that "any employment-related dispute . . . which would otherwise be brought in state or federal court" must be arbitrated in the EDSI forum. (Emphasis added.) This provision indicates that workers' compensation claims such as Kilpatric's that would otherwise be tried by bench trial are subject to arbitration pursuant to the arbitration agreement.

III. Waiver
"`"[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration."' Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1028 (Ala.2000) (quoting Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 103 (Ala.1997)). A party seeking to prove a waiver of a right to arbitrate carries a heavy burden, and the courts will not lightly infer a waiver of the right to compel arbitration. Lee, 784 So.2d at 1028-29 (citing Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998)). Doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, `whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' Moses H. Cone Mem'l Hosp. [v. Mercury Constr. Corp.], 460 U.S. [1,] 24-25, 103 S.Ct. 927 [(1983)]."
Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1093 (Ala.2005).
"Waiver is a `defense to arbitrability.' Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). . . .
"`It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. *283 No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.'
"Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). Accord Ex parte Allen, 798 So.2d 668 (Ala.2001), and Lee v. YES of Russellville, Inc., 784 So.2d 1022 (Ala.2000).
"`Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver.' Price [v. Drexel Burnham Lambert, Inc.], 791 F.2d [1156,] 1162 [(5th Cir.1986)] (footnote omitted). `Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice.' Frye [v. Paine, Webber, Jackson & Curtis, Inc.], 877 F.2d [396,] 399 [(5th Cir.1989)].
"`Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.' Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995). `Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration.' Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968)."
Hales v. ProEquities, Inc., 885 So.2d 100, 105-06 (Ala.2003).
"[M]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver. But . . . the earliest point at which waiver of the right to arbitration may be found is when the other party files an answer on the merits."
Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216, 1219-20 (Ala.2001) (quotation marks and citations omitted).
Ryan's argues that the trial court erred by finding that Ryan's waived its right to compel arbitration of Kilpatric's claims. The dispositive issue is whether Ryan's substantially invoked the litigation process and thereby substantially prejudiced Kilpatric. Hales, 885 So.2d at 105. Because "`the determination as to whether there has been a waiver must . . . be based on the particular facts of each case,'" we will first review the pertinent procedural history of this case. Id. (quoting Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995)). On May 18, 2004, Kilpatric sued Ryan's. On June 24, 2004, Ryan's answered, asserting arbitration as an affirmative defense to Kilpatric's retaliatory-discharge claim but not as an affirmative defense to the claim for workers' compensation benefits. Also on June 24, Ryan's served interrogatories and requests for production on Kilpatric. On June 28, 2004, Ryan's filed a motion to quash service of a third-party subpoena that had been filed by Kilpatric. On July 2, Ryan's filed a notice of intent to serve five third-party subpoenas. On August 4, the trial court ordered Kilpatric to state the information that she sought to obtain by the third-party subpoena. On August 12, Ryan's filed an objection to Kilpatric's third-party subpoena. On August 16, Kilpatric, in response to the trial court's August 4 order, filed a position statement explaining her need for the information sought to be obtained by the third-party subpoena, and she attached to this position statement a two-page affidavit.
On August 20, 2004, Ryan's moved to compel arbitration. On September 9, *284 2004, Ryan's moved the trial court to compel Kilpatric to answer discovery. On September 13, Kilpatric filed an objection to the motion to compel discovery. On September 14, the trial court ordered Kilpatric to respond to discovery. On September 20, Kilpatric answered Ryan's requests for production, and, on October 4, Kilpatric answered Ryan's interrogatories. On January 26, 2005, the trial court denied Ryan's motion to compel arbitration.[2]
Ryan's did not waive its right to arbitrate Kilpatric's claims. The record on appeal indicates that, during the period between the filing of the complaint and the denial of the motion to compel arbitration, Ryan's conducted only limited discovery and objected to Kilpatric's third-party subpoena. In response to Ryan's actions, Kilpatric produced requested documents, answered interrogatories, and responded to Ryan's objection to Kilpatric's third-party subpoena. The record does not reveal the volume of the requested documents that Kilpatric produced or the breadth of the interrogatories that she answered. Ryan's moved to compel arbitration only approximately three months after Kilpatric filed her complaint. Although Ryan's invoked the litigation process, Ryan's did not substantially invoke that process. See Hales, 885 So.2d at 105. As we have previously noted, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)(footnote omitted).
Moreover, Kilpatric does not make a showing that she was substantially prejudiced by Ryan's limited invoking of the litigation process. Significantly, some of the discovery that Ryan's conducted is provided for under the rules of the arbitration agreement. The arbitration rules allow for the service of "a written request for production of documents" that must be satisfied or objected to within 15 days of the request. The arbitration rules also state that the arbitrators and any counsel of record "shall have the power of the subpoena process as provided by law." To the extent that Ryan's conducted discovery that was provided for under the rules of the arbitration agreement, Kilpatric was not prejudiced by Ryan's invoking the litigation process. Although the rules of arbitration are silent regarding interrogatories, the record does not indicate the scope of Ryan's interrogatories to which Kilpatric was ordered to respond. Although Kilpatric in her brief to this court alleges that she expended significant time and resources responding to Ryan's discovery, the record contains no evidence supporting this allegation. Given the facts of this case, we cannot conclude that Kilpatric was substantially prejudiced by Ryan's actions. Because Ryan's did not substantially invoke the litigation process and thereby substantially prejudice Kilpatric, Ryan's did not waive its right to arbitrate Kilpatric's claims against it.

IV. Unconscionability
Ryan's argues that the trial court erred by finding the arbitration agreement between Kilpatric and EDSI to be unconscionable.

*285 "`[T]here is nothing inherently unfair or oppressive about arbitration clauses,' Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir.1986), and arbitration agreements are not in themselves unconscionable, Ex parte McNaughton, 728 So.2d 592, 597-98 (Ala.1998). Instead, unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof. Conseco Fin. v. Murphy, 841 So.2d 1241, 1245 (Ala.2002).
"This Court has stated that `"[a]n unconscionable . . . contractual provision is defined as a . . . provision `such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'"' Southern United Fire Ins. Co. v. Howard, 775 So.2d 156, 163 (Ala. 2000) (quoting Layne v. Garner, 612 So.2d 404, 408 (Ala.1992), quoting in turn Lloyd v. Service Corp. of Alabama, 453 So.2d 735, 739 (Ala.1984), and Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). In Layne v. Garner, this Court first undertook to announce an explicit standard for determining whether a contract or contractual provision is unconscionable:
"`In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.'
"612 So.2d at 408. `For ease of discussion,' this Court has at times reduced the Layne v. Garner test to two essential elements: `(1) terms that are grossly favorable to a party that has (2) over-whelming bargaining power.' American Gen. Fin., Inc. v. Branch, 793 So.2d 738, 748 (Ala.2000). In addition, this Court recognizes a distinction between `substantive unconscionability' and `procedural unconscionability.' Substantive unconscionability
"`"relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction."'
"Ex parte Thicklin, 824 So.2d 723, 731 (Ala.2002) (emphasis omitted) (quoting Ex parte Foster, 758 So.2d 516, 520 n. 4 (Ala.1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed.1998)). Procedural unconscionability, on the other hand, `deals with "procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction."' Thicklin, 824 So.2d at 731 (quoting Foster, 758 So.2d at 520 n. 4)."
Leeman v. Cook's Pest Control, Inc., 902 So.2d 641, 645 (Ala.2004).
"To avoid an arbitration provision on the ground of unconscionability, the *286 party objecting to arbitration must show both procedural and substantive unconscionability." Rigas, 923 So.2d at 1087. In Rigas, 923 So.2d 1077, our supreme court analyzed procedural unconscionability in the context of an arbitration provision in a health-insurance contract. Our supreme court stated:
"We have said that `[a] primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability "to obtain the product made the basis of [the] action" without signing an arbitration clause.' American Gen. Fin., Inc. v. Branch, 793 So.2d 738, 750 (Ala.2000) (quoting Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 415 (Ala.1999)). In determining whether an arbitration agreement is procedurally unconscionable, we have looked at whether the consumer could obtain the product from the vendor or from another vendor without agreeing to an arbitration provision. See, e.g., Leeman v. Cook's Pest Control, 902 So.2d 641, and Branch, 793 So.2d at 750. The burden of demonstrating that the product cannot be obtained without signing an arbitration agreement is on the party asserting unconscionability. Leeman v. Cook's Pest Control, 902 So.2d at 645 (`unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof' (citing Conseco Fin. v. Murphy, 841 So.2d 1241, 1245 (Ala.2002)))."
923 So.2d at 1087-88. In concluding that Rigas, the insured third-party plaintiff, had not demonstrated procedural unconscionability, the supreme court stated:
"We cannot conclude that Rigas had `no meaningful choice' as to whether to enter into the contract that contained an arbitration provision . . . because Rigas has presented no evidence indicating that she was unable to, or even attempted to, secure a health-insurance policy with another company that would not include an arbitration provision or that she attempted to negotiate . . . for the removal of the arbitration provision. . . . "
923 So.2d at 1090.
Similarly, Kilpatric has made no showing that the arbitration agreement is procedurally unconscionable. Kilpatric has offered no evidence indicating that she lacked a meaningful choice in signing the arbitration agreement or that Ryan's exercised overwhelming bargaining power. Kilpatric also has made no showing that she would have had considerable difficulty obtaining similar employment with another employer without signing an arbitration agreement. Cf. American Gen. Fin., Inc. v. Branch, 793 So.2d 738, 751 (Ala.2000) ("In order to meet her burden of proof [to show overwhelming bargaining power, i.e., procedural unconscionability], a consumer need not show that the market was completely closed, only that she was unable to acquire goods or services without considerable expenditure of time and resources." (emphasis omitted)). Given the record before us, we cannot conclude that the arbitration agreement is procedurally unconscionable. We need not resolve the issue whether the arbitration agreement is substantively unconscionable because both procedural and substantive unconscionability must be proven in order to establish the affirmative defense of unconscionability, and Kilpatric has failed to carry her burden of proving that the agreement is procedurally unconscionable. See Rigas, 923 So.2d at 1087.

V. Public-Policy Arguments
Kilpatric also argues that the trial court's denial of the motion to compel arbitration of her workers' compensation claim should be affirmed because, she *287 says, as a matter of public policy, workers' compensation claims should not be subject to arbitration. To the extent that Kilpatric argues that specific provisions of the arbitration agreement are contrary to public policy concerning workers' compensation claims, her argument is essentially one arguing substantive unconscionability. However, as we have previously noted, substantive unconscionability alone is insufficient to prevent the enforcement of an arbitration agreement. To the extent that Kilpatric generally argues that workers' compensation claims as a matter of public policy should not be subject to arbitration, we must conclude that this matter is not one for this court to decide. Section 2 of the Federal Arbitration Act ("FAA") provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
"Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]."
Moses H. Cone Mem'l Hosp., 460 U.S. at 24, 103 S.Ct. 927. The FAA does not provide an exclusion for workers' compensation claims. We therefore cannot conclude, as a general proposition, that workers' compensation claims are not subject to arbitration. Of course, an agreement to arbitrate workers' compensation claims may be held invalid if "grounds . . . exist at law or in equity for the revocation of" that agreement. 9 U.S.C. § 2. Kilpatric has not demonstrated such grounds for invalidation of the arbitration agreement in this case. To the extent that Kilpatric argues that the arbitration of workers' compensation claims conflicts with the policies of the Alabama Workers' Compensation Act, we must note that the FAA preempts contrary state law. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). See also Ex parte Colquitt, 808 So.2d 1018, 1022 (Ala.2001).

Conclusion
For the foregoing reasons, the trial court's order denying Ryan's motion to compel arbitration is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, J., concurs specially, with writing, which CRAWLEY, P.J., joins.
BRYAN, J., concurs specially, with writing.
THOMPSON, J., dissents, with writing.
MURDOCK, J., dissents, with writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion. I would only add that in 2001 a Texas appellate court addressed and soundly rejected an argument, similar to that made by Donna Kilpatric in this case, that a claim should not be deemed arbitrable, as a matter of state public policy, because it seeks an award of benefits under a state's workers' compensation act:
"[The employee] contends that Texas public policy as manifested in the workers' compensation statutes prohibits the arbitration of his claims. We construe this as an assertion that `legal constraints external to the parties' agreement *288 foreclose[] the arbitration of those claims.' Mitsubishi Motors [Corp. v. Soler Chrysler-Plymouth, Inc.], 473 U.S. [614,] 628, 105 S.Ct. [3346,] 3355 [(1985)]; Webb [v. Investacorp, Inc.], 89 F.3d [252,] 258 [(5th Cir.1996)].
"`The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.' Shearson/Am. Express, [Inc. v. McMahon,] 482 U.S. [220,] 226-27, 107 S.Ct. [2332,] 2337 [(1987)] (emphasis added); see also [In re] Conseco Fin. Servicing [Corp.], 19 S.W.3d [562,] 571 [(Tex.App.2000)]; [In re] Van Blarcum, 19 S.W.3d [484,] 490 [(Tex.App. 2000)]. Any public policy expressed by the Texas Legislature in enacting the workers' compensation statutes is irrelevant to this inquiry. See Swenson [v. Management Recruiters Int'l, Inc.], 858 F.2d [1304,] 1309 [(8th Cir.1988)]; De-Sapio [v. Josephthal & Co., Inc.], 143 Misc.2d [611,] 616, 540 N.Y.S.2d [932,] 936 [(1989)]; see also Perry [v. Thomas], 482 U.S. [483,] 492 n. 9, 107 S.Ct. [2520,] 2527 n. 9 [(1987)]; Jack B. Anglin Co. [v. Tipps], 842 S.W.2d [266,] 271 [(Tex.1992)]; [In re] Turner Bros. Trucking [Co.], 8 S.W.3d [370,] 374 [(Tex.App.1999)]; Conseco Fin. Servicing, 19 S.W.3d at 571."
In re David's Supermarkets, Inc., 43 S.W.3d 94, 99-100 (Tex.App.2001) (some emphasis added; footnotes omitted).
CRAWLEY, P.J., concurs.
BRYAN, Judge, concurring specially.
I am troubled by the policy implications of today's decision. I do not believe that the Alabama Legislature intended, when it enacted the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, that workers' compensation claims be arbitrated. However, as the main opinion notes, the Federal Arbitration Act ("FAA"), not the Alabama Workers' Compensation Act, controls the question whether a workers' compensation claim is arbitrable. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). As the main opinion further notes, the FAA does not exclude workers' compensation claims from the broad scope of arbitrable claims. Therefore, I am constrained to conclude that, under the current applicable law, workers' compensation claims are arbitrable.
I note also that Donna Kilpatric's failure to establish any evidence of procedural unconscionability precluded her from possibly prevailing on her affirmative defense of unconscionability. A party asserting unconscionability as a defense to arbitration must establish both procedural and substantive unconscionability. Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1087 (Ala.2005). Had Kilpatric established evidence of procedural unconscionability, I believe the question whether the arbitration agreement is substantively unconscionable would have been a close question for this court to decide. Other appeals will, in all likelihood, present this issue differently.
THOMPSON, Judge, dissenting.
As the main opinion notes, section 2 of the Federal Arbitration Act ("FAA") broadly requires courts to enforce arbitration provisions in contracts affecting interstate commerce, even when statutory claims such as workers' compensation claims are involved. 9 U.S.C. § 2. See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, I find the arbitration agreement at issue in this particular case to be invalid because the agreement does not allow for effective adjudication of Donna *289 Kilpatric's workers' compensation claim.
In a series of cases, federal courts have refused to enforce arbitration provisions in employment contracts that were otherwise enforceable under the FAA because the provisions were "so fundamentally unfair as to prevent [the employee] from effectively vindicating [his or] her statutory rights. . . ." McMullen v. Meijer, Inc., 355 F.3d 485, 490 (6th Cir.2004). See also Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 385 (6th Cir.2005); Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 313 (6th Cir.2000); and Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir.1999).
The arbitration agreement in this case between Employment Dispute Service, Inc. ("EDSI"), and Kilpatric contains several questionable provisions that would support a determination that this arbitration agreement should not be enforced. First, in Article VII, regarding interpretation of the arbitration rules, the agreement provides, "Prior to the appointment of an adjudication panel, the chief executive officer of EDSI, or his designee, shall interpret these Rules and Procedures and decide any issue which may arise relating to them." A later provision, Article IX, describes the process for selection of arbitrators:
"Section 1: To resolve any claim, dispute and/or cause of action, a panel of three (3) Adjudicators shall be chosen. One Adjudicator shall be chosen from each of the following separate selection pools:
"a. Supervisors or managers of an employer signatory to EDSI agreements;
"b. Non-exempt employees (non-exempt as defined by the Federal Wage and Hour law) who are signatory to EDSI Agreements;
"c. Attorneys, retired judges, or other competent legal professional persons not associated [with either party]
"Section 2: [EDSI] shall provide, listed by selection pool, a list of three (3) potential Adjudicators in each of the three (3) selection pools. No individual shall be included in a selection pool that has at any time been employed by the employer involved in the dispute. The complainant shall strike one name from a pool, then the Defendant shall strike one name until one name from each of the three (3) selection pools remains.
"Section 3: Any potential Adjudicator may be struck for cause. . . .
"Section 4: . . . In all disputes where the claimed amount in controversy exceeds . . . [$20,000] the pool (c) individual shall be a licensed attorney."
I find that the above provisions unfairly favor EDSI and, by implication, Ryan's, in regard to the interpretation of the arbitration rules and the selection of arbitrators, and the federal cases on this issue are in accord.
In Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d at 316, the United States Court of Appeals for the Sixth Circuit refused to enforce arbitration agreements between EDSI and several employees of Ryan's because those agreements were not supported by consideration. Notably, the agreement at issue in Floss had the same provisions as the agreement in this case regarding the selection of adjudicators and involved the same organization, EDSI, that manages arbitration for Ryan's. In Floss, one of the workers in the action brought a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the court noted that, under the FAA, statutory claims like those brought under the FLSA could be subject to compulsory arbitration. However, the court stated:

*290 "[E]ven if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim. Otherwise, arbitration of the claim conflicts with the statute's purpose of both providing individual relief and generally deterring unlawful conduct. . . . "
Floss, 211 F.3d at 313.
The Floss court then, in dictum, expressed concern that the EDSI agreement failed to provided the "effective vindication" required under the FAA, with regard to the fee structure and potential bias of arbitrators:
"We have serious reservations as to whether the arbitral forum provided under the current version of the EDSI Rules and Procedures is suitable for the resolution of statutory claims. Specifically, the neutrality of the forum is far from clear in light of the uncertain relationship between Ryan's and EDSI. [The employees] suggest that EDSI is biased in favor of Ryan's and other employers because it has a financial interest in maintaining its arbitration service contracts with employers. Though the record does not clearly reflect whether EDSI, in contrast to the American Arbitration Association, operates on a for-profit basis, the potential for bias exists. In light of EDSI's role in determining the pool of potential arbitrators, any such bias would render the arbitral forum fundamentally unfair. See Cole v. Burns Int'l Security Services, 105 F.3d 1465, 1482 (D.C.Cir.1997) (`At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections.')."
Floss, 211 F.3d at 314.
Subsequently, in Walker v. Ryan's Family Steak Houses, Inc., supra, the Sixth Circuit Court of Appeals relied on the dictum in Floss to hold that the same type of "arbitral forum" at issue in Floss and in this case was "not neutral," therefore rendering the agreement unenforceable. 400 F.3d at 385-86. The court analyzed the agreement as follows:
"The record in this case removes any of the uncertainties surrounding the relationship between Ryan's and EDSI that the Court noted in Floss. EDSI is clearly a for-profit business, and Ryan's annual fee accounted for over 42% of EDSI's gross income in 2002. Given the symbiotic relationship between Ryan's and EDSI, Ryan's effectively determines the three pools of arbitrators, thereby rendering the arbitral forum fundamentally unfair to claimants who are applicants or employees. See [Geiger v. Ryan's Family Steak Houses, Inc., 134 F.Supp.2d 985, 995 (S.D.Ind.2001)] (. . . holding that EDSI's full authority to select both the Rules for arbitration as well as the pools of potential arbitrators, combined with EDSI's potential bias in favor of employers like Ryan's, rendered it `unlikely that applicants/employees will participate in an unbiased forum'); McMullen [v. Meijer, Inc.], 355 F.3d [485,] 493-94 [(6th Cir.2004)](holding that the employer's exclusive control over the pool of potential arbitrators prevented the plaintiff from effectively vindicating her Title VII rights: `[T]he arbitrator-selection procedure used by Meijer allows it to create the type of symbiotic relationship with its arbitrators that we feared would promulgate bias in Floss.'); Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938-39 (4th Cir. 1999) (affirming denial of motion to compel because the arbitration rules provided a mechanism for selecting a panel of three arbitrators that was crafted to ensure *291 a biased decisionmaker; the employer created the list of potential arbitrators).
"The bias against employees and applicants is significantly enhanced by the lack of any criteria governing employees of signatory companies who are eligible to serve as adjudicators. There are no minimum educational requirements, potential arbitrators do not need to have any relevant experience as an adjudicator, and there is no explicit requirement that they be unbiased. Similarly, the rules do not require that the legal professionals who comprise the third pool possess either substantive or procedural knowledge of dispute resolution or of the employment law issues involved in the arbitration. The names of potential arbitrators for the legal professional pool purportedly are provided to EDSI by an unaffiliated company, Resolute Systems, Inc.; however, there is no information in the record regarding how Resolute Systems selects potential adjudicators for EDSI's program.
"The bias is exacerbated by the lack of a protocol governing EDSI's selection of potential adjudicators from the three pools. The individuals in the supervisor and employee pools are neither randomly selected nor chosen by a disinterested person for their skills. Instead, all members of these two pools are chosen by the small number of employers who, like Ryan's, have signed alternative dispute resolution agreements with EDSI: Golden Corral Steak Houses, K & W Cafeterias, Papa John's Pizza, Sticky Fingers Restaurants, The Cliffs at Glass, Inc., and Wieland Investments, Inc. In addition, the rules do not prevent a supervisor of a signatory company from sitting on an adjudication panel with a nonsupervisory employee from the same company, including someone whom the supervisor directly supervises. Further, EDSI has no policy in place that prohibits a signatory company from discussing the arbitration process or specific claims with its employee adjudicators or from attempting to improperly influence its employee adjudicators.
"Finally, the limited discovery that the EDSI forum provides could significantly prejudice employees or applicants. The rules allow `just one deposition as of right and additional depositions only at the discretion of the (arguably biased) panel, with the express policy that depositions "are not encouraged and shall be granted in extraordinary fact situations only for good cause shown."' Geiger, 134 F.Supp.2d at 996 (quoting EDSI Rules, Art. XII, § 6; reproduced at J.A. 315.). We agree with the district court's conclusion in Geiger that `the limited discovery, controlled by a potentially biased arbitration panel, . . . creates the unfairness to claimants.' Id. We acknowledge that the opportunity to undertake extensive discovery is not necessarily appropriate in an arbitral forum, the purpose of which is to reduce the costs of dispute resolution. Indeed, when parties enter arbitration agreements at arms-length they typically should expect that the extent of discovery will be more circumscribed than in a judicial setting. But parties to a valid arbitration agreement also expect that neutral arbitrators will preside over their disputes regarding both the resolution on the merits and the critical steps, including discovery, that precede the arbitration award. A structural bias in the make-up of the arbitration panel, which would stymie a party's attempt to marshal the evidence to prove or defend a claim, can be just as prejudicial as arbitral bias *292 in the final decision on the merits. Such is the case here, providing an additional basis to conclude that EDSI's and Ryan's arbitration scheme does not allow for the effective vindication of Plaintiffs' FLSA claims."
Walker, 400 F.3d at 386-88 (footnote omitted).
The provisions of the agreement in this case are virtually, if not completely, identical in all relevant respects to those provisions at issue in Walker. I have the same concerns about this agreement as the courts in Floss, supra, and Walker, supra. Also, in addition to the observations made by the Walker court, I find that the agreement unfairly favors the employer in defining the manner in which it is to be interpreted. The agreement allows the chief executive of EDSI, or his designee, the exclusive right to resolve any dispute concerning interpretation of the arbitration rules.
Further, there is no provision in the arbitration agreement to govern or oversee a settlement agreement between the parties or to provide oversight in any subsequent proceedings should the employer seek to reopen the action at a later date. See § 25-5-57(a)(4)b, Ala.Code 1975. The agreement also fails to indicate the steps to be taken if the employee or the employer does not comply with the directives of the decision of the panel of adjudicators.
I emphasize that, in my opinion, given an unbiased agreement, workers' compensation claims can be subject to arbitration. However, I conclude that the arbitration agreement at issue in this case does not afford Kilpatric effective vindication of her workers' compensation claims as required under the FAA by federal common law. Therefore, this case is not appropriate for arbitration. Based on the foregoing, I would affirm the trial court's judgment, albeit on a different basis than that cited by the trial court. See Smith v. Equifax, 537 So.2d 463, 465 (Ala.1988).
MURDOCK, Judge, dissenting.
I agree in the main with Judge Thompson's reasoning as to why the arbitration agreement in this case should not be enforced.
NOTES
[1] Liberty National states:

"[T]his Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment, Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element, Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Kennedy v. Western Sizzlin Corp., 857 So.2d 71 (Ala.2003))."
881 So.2d at 1020.
[2] The trial court's order mistakenly found that Ryan's delayed "filing its motion to compel arbitration until after it obtained all discovery from [Kilpatric] and then, after receiving such discovery, [Ryan's made] a decision to avoid litigation . . . by compelling arbitration." The record on appeal reveals that Ryan's obtained discovery after filing the motion to compel arbitration.