MALONE, Chief Justice.
Aurora Healthcare, Inc.; Aurora Cares, LLC, d/b/a Tara Cares (hereinafter referred to collectively as “the Aurora defendants”); and Birmingham Nursing and Rehabilitation Center East, LLC (“Birmingham East”) (the Aurora defendants and Birmingham East are hereinafter referred to collectively as “the defendants”), appeal from an order of the Jefferson Circuit Court denying their motion to compel arbitration. We reverse and remand.

Facts and Procedural History

On or about November 7, 2003, Mary Pettway, then 75 years old, was discharged from the hospital at the University of Alabama at Birmingham and admitted to a nursing home in Birmingham owned and operated by the defendants. She was returned to the hospital and then readmitted to the nursing home twice in the weeks following her initial discharge. Upon Pett-way’s first readmission, an arbitration agreement was apparently executed, along with the other admission documents, on behalf of Pettway. Pettway was finally returned to the hospital, where she died on December 10, 2003.
On November 3, 2005, Sharon Ramsey, in her capacity as administratrix of Pett-way’s estate, filed a complaint in the Wilcox Circuit Court against the defendants.[1] The complaint asserted a variety of statutory and common-law claims allegedly arising from Pettway’s death, including a wrongful-death claim.
The defendants filed a motion to dismiss or for a change of venue on December 6, 2005, on the basis of Ala.Code 1975, § 6-5-546. That statute provides that a wrongful-death action against a health-care provider must be brought in the county where the alleged acts or omissions occurred, if the acts or omissions occurred in only one county. Ramsey alleged that there was a question of fact as to whether the acts and omissions complained of occurred in only one county. As a result, the parties litigated the issue of venue vigorously until the Wilcox Circuit Court entered an order transferring the case to the Jefferson Circuit Court (“the circuit court”) on March 27, 2006.[2]
On May 11, 2006, the Aurora defendants filed a motion to dismiss on the ground that they did not own the nursing home at which Pettway resided during the relevant period. On the same day, Birmingham East filed an answer to Ramsey’s complaint. On May 17, 2006, the circuit court entered both a scheduling order and an order denying the Aurora defendants’ motion to dismiss.[3]
On August 21, 2006, Ramsey moved for an extension of the deadline set in the scheduling order for filing expert-witness disclosures pursuant to Rule 26, Ala. R. Civ. P. On August 23, 2006, the defendants filed their opposition to that motion. *498 Also in August and September 2006, the Aurora defendants served notices of intent to subpoena third parties. The Aurora defendants served interrogatories and requests for production of documents on Ramsey on September 19, 2006. On October 11, 2006, the defendants filed their own motion to extend the time in which to make their Rule 26 expert-witness disclosures. On October 25, 2006, the Aurora defendants responded to Ramsey’s discovery requests.
On November 3, 2006, the defendants filed their motion to compel arbitration, based in part on the arbitration agreement executed in conjunction with the admission agreement Ramsey executed upon Pett-way’s second admission to the nursing home. That motion constitutes the defendants’ first mention of arbitration in this proceeding. The defendants’ entire explanation for their delay in asserting their right to arbitrate this case is contained in a motion for an extension of their own Rule 26 expert-witness disclosure deadlines, also filed by the defendants on November 8, 2006: “Defendants only recently became aware of the existence of an arbitration agreement between the Plaintiff and the Defendants.”
Active litigation continued through April 24, 2008, when a hearing on the motion to compel arbitration was conducted. During the hearing the circuit court requested that the parties file letter briefs. On May 2, 2008, the defendants sent a letter brief to the circuit court addressing only the issue whether they had waived their right to arbitration by participating in the litigation process. There is no corresponding letter brief from Ramsey in the record. The record then falls inexplicably silent for nearly two years. In April and May 2010, counsel for the defendants withdrew and new counsel entered an appearance.
On June 23, 2010, the circuit court entered its order denying the defendants’ motion to compel arbitration. In that order, the circuit court found that the defendants had substantially invoked the litigation process by litigating the issue of venue to a conclusion, by continuing to file “significant pleadings” .after the case was transferred, and by participating in discovery. The circuit court also determined that Ramsey had been prejudiced by incurring significant attorney fees in participating in the litigation. The June 23, 2010, order states, in pertinent part:
“[T]he Defendants filed an Answer on May 11, 2006,[4] that failed to assert a right to arbitration. In addition to filing an Answer, the Defendants filed several motions to dismiss or transfer venue, thus continuing to proceed as if they were preparing for a judicial resolution of Plaintiff[]s claims. The parties litigated the issue of venue for three months. This undoubtedly ‘bespeaks an intention to abandon the right [to compel arbitration] in favor of the judicial process.’ See, Companion Life Ins. Co. [v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995),] and Voyager Life Insurance Co. [v. Hughes, 841 So.2d 1216 (Ala.2002) ]. The Defendants were in possession of the arbitration document throughout their participation in the litigation-related activity, and it serves no purpose for a party who does not intend to waive the right to compel arbitration to, before moving to compel arbitration:
“•litigate the venue issue to a conclusion;
“• following transfer of the action to this Circuit Court, continue litigation with significant pleadings filed;
“• participate in the discovery process,
*499 “To the undersigned, it is clear the Defendants were preparing for a judicial resolution.
“In Ex parte Hood, 712 So.2d 341 (Ala.1998), the defendant removed an action to the federal court. Four months later, while the action was still pending in the federal court, the defendant advised the plaintiff through correspondence that it was invoking its rights under an arbitration agreement. Shortly thereafter, in its answer to the complaint, the defendant asserted its right to arbitration. [The] Court stated:
“ ‘We might assume that if Golden [the defendant] had immediately followed ... its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood [the plaintiff] on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the ease to the federal court and proceeded as if it was preparing for a judicial resolution of Hood’s claim.’

“Hood, supra.

“In conclusion, when Ramsey’s Complaint was filed on November 3, 2005, these Defendants had in their possession an arbitration document, yet they proceeded to engage in litigation activities (including, notably, a legal fight over exactly where to actually litigate, and the filing of an Answer that did not assert a right to arbitration) until November 3, 2006, exactly one year after filing of the Complaint. The Court DETERMINES that Plaintiff Ramsey has indeed been prejudiced by Defendants’ unreasonable delay to raise the right to arbitration in that she significantly participated in the litigation so far, thereby incurring considerable attorney fees and expenses for, to-wit: conducting legal research; argument in opposition to transferring venue; preparing and filing a petition for writ of mandamus with the Alabama Supreme Court; responding to several motions to dismiss and strike; preparing and filing an Amended Complaint; preparing discovery and responding to discovery; participating in phone conferences; and, of course, making court appearances. As all of the foregoing occurred as a direct result of Defendants’ continuing participation in the litigation process, this Court FINDS that Defendants have clearly WAIVED any right to compel arbitration of Plaintiff Ramsey’s claims.”
(Capitalization and emphasis in original.) Virtually all the litigation activity between November 3, 2006, and June 23, 2010, was devoted to the question of arbitration.

Standard of Review

In this case, the circuit court heard no ore tenus evidence. Its findings of fact were based on the paper record and on hearings attended only by counsel. Our review under such circumstances of the circuit court’s determination that a party has waived its right to arbitration is de novo. ClimaStor IV, L.L.C. v. Marshall Constr., L.L.C., 4 So.3d 452, 455 (Ala.2008). To the extent, however, that the circuit court’s findings supporting its con clusion are based on questions of fact, its judgement based on those findings will not be reversed unless clearly erroneous. Big Valley Home Ctr., Inc. v. Mullican, 774 So.2d 558, 560 (Ala.2000).

*500
Discussion

Whether a party has waived its right to arbitration by participating in the litigation process is determined pursuant to the following standard:
“It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.”
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). Thus, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration has substantially invoked the litigation process, bespeaking an intent to abandon arbitration in favor of the judicial process, and (2) that the party opposing arbitration would be “substantially prejudiced” by an order requiring it to submit to arbitration. Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 564 (Ala.2007). See also SouthTrust Bank v. Bowen, 959 So.2d 624, 633 (Ala.2006). Because there is a strong federal policy favoring arbitration, waiver of the right to compel arbitration is not lightly inferred, and the party seeking to prove waiver has a “heavy burden.” Boles, 987 So.2d at 564.
Beginning our analysis with the second question — whether the opposing party would be substantially prejudice — we conclude that Ramsey has failed to carry her “heavy burden” of establishing substantial prejudice caused by the defendants’ belated invocation of the arbitration agreement. Ramsey stated in her opposition to the defendants’ motion to compel arbitration that she had “incurred considerable attorney fees and expenses as a result of the Defendants’ participation in the litigation process.” Ramsey stated that her counsel’s activities included “preparing discovery and responses to discovery, ... legal research, ... phone conferences and making court appearances in Wilcox and Jefferson County Circuit Courts.”
The circuit court’s June 23, 2010, order likewise states that Ramsey had conducted “legal research; argument in opposition to transferring venue; preparing and filing a petition for writ of mandamus with the Alabama Supreme Court [related solely to venue]; responding to several motions to dismiss and strike; preparing and filing an Amended Complaint; preparing discovery and responding to discovery; participating in phone conferences; and ... making court appearances.” These assertions are not supported by any factual evidence in the record.
In Hales v. ProEquities, Inc., 885 So.2d 100 (Ala.2003), this Court stated the factors most significant in determining whether the party opposing arbitration will be prejudiced if ordered to arbitrate. One factor is whether “ ‘the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.’” 885 So.2d at 105-06 (quoting Morewitz v. West of England Ship Owners Mut. Prot. & Indem. Ass’n, 62 F.3d 1356, 1366 (11th Cir.1995)). Another is whether the party seeking arbitration “ ‘took advantage of judicial discovery procedures not available in arbitration.’ ” Hales, 885 So.2d at 106 *501 (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968)).
In its June 23, 2010, order, the circuit court reproduced a timeline of events that was initially produced by Ramsey in her filing in opposition to the motion to compel arbitration. The timeline purportedly demonstrates the extent to which the defendants substantially invoked the litigation process.[5] The timeline shows that much of Ramsey’s costs were incurred litigating the issue of venue. The incurring of those costs, however, cannot constitute prejudice in light of this Court’s holding that “[a] defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration.” Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala.1999).[6]
The litigation activities conducted between April 2006, when the case was transferred to the Jefferson Circuit Court, and November 2006, when the motion to compel arbitration was filed, were primarily discovery oriented. The Code of Procedure of the National Arbitration Forum, expressly incorporated into the arbitration agreement allegedly executed by Ramsey upon Pettway’s second admission to the nursing home, at Rule 6 requires arbitrating parties to submit available documents in support of, or in opposition to, all claims.[7] Little, if any, discovery appears to have been conducted of the sort that suggests that the defendants “ ‘took advantage of judicial discovery procedures not available in arbitration.’ ” Hales, 885 So.2d at 106 (quoting Carcich, 389 F.2d at 696 n. 7). See also Ryan’s Family Steakhouse, Inc. v. Kilpatric, 966 So.2d 273, 284 (Ala.Civ.App.2006) (noting that participating in discovery permitted under rules specified in the arbitration agreement between the parties does not constitute prejudice). We do note that the defendants served notices of intent to serve nonparty subpoenas, but there is no suggestion in the record that Ramsey took any action or incurred any expenses in response to those notices.
The record reflects that much of Ramsey’s time expended in litigation after November 2006 was devoted to opposing arbitration. Expenses incurred by the party opposing arbitration are not considered prejudicial. A holding to the contrary would result in the absurdity that every party opposing arbitration can immediately allege prejudice on the mere ground that the party opposed it.
Ramsey’s motion in opposition to arbitration presented only conclusory assertions that she had incurred litigation costs. Her motion was not accompanied by an affidavit or by any other evidence in support of the allegation that she would be prejudiced by being compelled to arbitrate her claims. Ramsey did not even allege how many hours her counsel had spent in litigation matters or the amount of fees or expenses incurred in such matters. Alabama caselaw shows that a party alleging prejudice is unlikely to prevail without presenting supporting evidence. See, e.g., SouthTrust Bank v. Bowen, 959 So.2d at 633 (holding that the plaintiff opposing arbitration failed to meet his “heavy bur *502 den” when he provided no evidence supporting his allegation that he would be prejudiced by being compelled to arbitrate). See also Ex parte Greenstreet, Inc., 806 So.2d 1203, 1209 (Ala.2001) (“If [a] party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration.”). Thus, in Ryan’s Family Steakhouse, Inc. v. Kilpatric, 966 So.2d at 284, the court found no prejudice where the record contained no evidence supporting the allegations of the plaintiff, who opposed arbitration, that she had expended significant time and resources responding to discovery propounded by the party seeking arbitration.
This Court’s opinions upholding a finding of prejudice to the party opposing arbitration are equally consistent in applying a high standard. In Whitesell Manufacturing, Inc., supra, the plaintiffs argument that he would have been substantially prejudiced if arbitration were compelled was well supported by the fact that the defendant sought arbitration only after it had removed the case to federal court and had received an adverse ruling in its attempt to dispose of the case on federal statutory grounds. 670 So.2d at 899. That plaintiff also submitted an affidavit showing the number of hours expended by counsel and the amount of fees incurred in seeking remand to the state court. Id.
In Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6 (Ala.2006), the defendant seeking arbitration removed the action to federal court, filed an answer in the federal court that did not mention arbitration, then sought to have the case transferred to pending multidistrict litigation in Illinois. After opposing the transfer to Illinois, the plaintiff won remand of the case to the state court. Only then did the defendant move to compel arbitration. 939 So.2d at 14-15. Under such facts, this Court concluded that it could not “realistically be disputed” that the plaintiff had been prejudiced by the necessity of filing motions and briefs opposing the removal, opposing the transfer to Illinois (including filing motions and briefs in Illinois), and moving for a remand. 939 So.2d at 17.
In Big Valley Home Center, Inc. v. Mullican, 774 So.2d 558 (Ala.2000), this Court affirmed a trial court’s denial of a motion to compel arbitration where the defendant seeking arbitration had waited two years to invoke an arbitration agreement, which it did on the “eve of trial” and immediately after a settlement offer had been made. 774 So.2d at 563. This Court concluded that “too great a delay took place” in a case in which the plaintiff had been allowed to expend time and money preparing for trial before the defendant moved to compel arbitration. Id.
Under the undisputed facts of this case and the applicable standard of review, we conclude that Ramsey failed to establish that she was prejudiced by the defendants’ belated assertion of their arbitration rights. Because a plaintiff opposing arbitration must show both the defendant’s substantial invocation of the litigation process and resulting “substantial prejudice,” we pretermit discussion of whether the defendants here had invoked the litigation process so as to bespeak an intent to abandon their right to arbitration.

Conclusion

Because we conclude that there is insufficient evidence in the record to support a determination that Ramsey was substantially prejudiced by the defendants’ belated assertion of their right to arbitration, the order of the circuit court denying the defendants’ motion to compel arbitration must be reversed. We are unable to determine, however, whether this case is due to be arbitrated. The parties dispute *503 whether Ramsey’s signature on the arbitration agreement is authentic or forged, whether the agreement, signed subsequent to Pettway’s initial admission to the nursing home, operates retroactively, and whether the Aurora defendants, nonsigna-tories to the arbitration agreement, can enforce the agreement. The circuit court did not provide findings of fact or conclusions of law as to any of those issues but denied the defendants’ motion to compel solely on the basis of waiver.
Accordingly, we reverse the circuit court’s June 23, 2010, order denying the defendants’ motion to compel arbitration. We remand the cause for that court to consider the motion to compel arbitration in light of the issues associated with the validity and scope of the arbitration agreement proffered by the defendants.
REVERSED AND REMANDED WITH INSTRUCTIONS.
STUART, PARKER, and WISE, JJ„ concur.
SHAW, J., concurs in the result.

. Other entities named as defendants were dismissed after proving they did not own or operate the nursing home where Pettway resided during the period relevant to Ramsey’s claims.

. The defendants and the circuit court both state variously in the record that Ramsey petitioned for a writ of mandamus to return the case to Wilcox County. No evidence of the petition appears in the record. The circuit court, in its order of June 23, 2010, states that the petition was filed with the Alabama Supreme Court, but it also states that the circuit court entered an order denying the mandamus petition on June 21, 2006. This Court’s records indicate that a petition for a writ of mandamus filed by Ramsey was denied on June 21, 2006 (case no. 1051091).

.Although the May 17, 2006, order and other orders and filings referred to by the parties are not included in the record, the circuit court states in its June 23, 2010, order that it entered the earlier order.

4. The only answer filed on May 11, 2006, was filed by Birmingham East.

. Many of the events listed unquestionably do not show the defendants’ invocation of the litigation process. For example, the first event listed is the filing of Ramsey’s complaint.

. We note that Ramsey does not argue that we should overrule Thompson.

. We take judicial notice of the National Arbitration Forum's Code of Procedure. See Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So.2d 1281, 1284 (Ala.2008).