STUART, Justice.
IBI Group, Michigan, LLC, f/k/a Giffels, LLC (“Giffels”), appeals the order of the Mobile Circuit Court ordering it to arbitrate its claims against Outokumpu Stainless USA, LLC, f/k/a ThyssenKrupp Stainless USA, LLC (“OTK”), and Thys-senKrupp Steel USA, LLC, f/k/a Thyssen-Krupp Steel and Stainless USA, LLC (“TK Steel”) (OTK and TK Steel are hereinafter referred to collectively as “the steel companies”), pursuant to an arbitration provision in the contracts at the center of this dispute. We affirm.
I.
On September 5/2007, Giffels and TK Steel entered into a contract pursuant to which Giffels agreed to provide architectural and engineering services to TK- Steel in association-with the construction of the cold rolling mill at a steel-processing facility in Calvert. Approximately 10 months ■later, on June 27,2008, Giffels entered into another contract with OTK’s predecessor to, provide similar services in association with the construction of a melt shop at the same facility. Both contracts contained identical provisions regarding the resolution of any disputes that might arise from the contracts, which stated: .“Any dispute arising out of or related to the contracts] shall be subject to mediation, arbitration or the institution of legal or equitable proceedings at the sole discretion of [the steel companies].” The contracts contained further provisions outlining certain guidelines that would apply to mediation, arbitration, and legal proceedings, including the follow *4 ing provision: “Unless otherwise agreed by the parties, during the arbitration proceedings discovery shall be available and shall be conducted in accordance with the rales of discovery set forth in the U.S. Federal Rules of Civil Procedure in effect at such time.”
Thereafter, disputes arose between Gif-fels and the steel companies regarding the work performed by Giffels under both contracts, and, on Mai'ch 14, 2012, the steel companies sued Giffels in ■ the United States District Court for the Southern District of Alabama (“the federal district court”) alleging two counts of breach of contract and seeking compensatory ■ damages in excess of $7.5 million. On March 29, 2012, and June 13, 2012, the steel companies filed amended complaints asserting additional claims. Giffels subsequently filed its answer to the steel companies’ complaint and asserted its own counterclaims alleging that the steel companies owed it money for-work performed under the two contracts. Giffels also moved to strike the steel companies’ jury demand on the basis of a provision in the contracts expressly waiving the right to a jury trial in any litigation stemming from the contracts. Thereafter, the steel companies filed an answer , to Giffels’s counterclaims and withdrew their jury demand.
On August 24, 2012, the steel companies and Giffels held the discovery-planning conference required by Rule 26(f), Fed. R.Civ.P. On September 10,2012, the federal district court conducted a scheduling conference, and the parties then commenced discovery, with each party serving discovery requests upon the other. Giffels asserts that it incurred over $80,000 in expenses just in preparing the initial disclosures required by Rule 26(a)(1), Fed. R.Civ.P.
On June 4,2013, the federal district court, sua sponte, entered an order questioning whether federal jurisdiction was proper in this case. The steel companies responded by filing an amended complaint in which they further described their basis for claiming that federal jurisdiction was appropriate under 28 U.S.C. § 1332 based on the parties’ alleged complete diversity of citizenship; Giffels subsequently filed an amended answer in which it qsserted that both its sole member and the sole member of OTK’s predecessor were incorporated in Delaware, which fact, if true, would defeat diversity jurisdiction.[1] See, e.g., Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir.2004) (“[A] limited liability company is a citizen of any state of which a member of the company is a citizen.”). The steel companies moved to strike Giffels’s amended answer, arguing that Giffels’s claim that its sole member was incorporated in Delaware was contradicted by publicly available records maintained by the Michigan Secretary of State; however, after Giffels filed a response again indicating that, notwithstanding any other records the steel companies might have, its sole member was a Delaware corporation, the federal district court ordered Giffels to file documentation of its jurisdictional claim. Giffels filed the requested proof on July 29,2013. .
On July 31, 2013, the steel companies moved the federal district court to stay the litigation, noting that they had initiated arbitration proceedings with the American Arbitration Association that same day pursuant to the provisions in the contracts *5 stating that disputes regarding those contracts were subject to arbitration at the sole discretion of the steel companies. However, that same day, Giffels filed a complaint in the Mobile Circuit Court (“the trial court”) asserting as state-law claims the same counterclaims it had asserted in the federal district court. On August 5, 2013, the steel companies filed an answer and counterclaims in the state-court action while simultaneously moving the state court to stay the state-court proceedings and compel arbitration. On August 7, 2013, the federal district court formally dismissed the federal action for lack of subject-matter jurisdiction without ruling on the steel companies’ request to stay the federal-court action pending the completion of arbitration proceedings.
Thereafter, Giffels notified the trial court that it opposed the steel companies’ attempt to compel arbitration, arguing that the contracts afforded the steel companies no right to select arbitration once they had made an initial choice to attempt to resolve their claims via litigation or, in the alternative, that the steel companies had substantially invoked the litigation process to the prejudice of Giffels, thus waiving any right they may have had to arbitration under the contracts. The parties subsequently filed multiple additional briefs with the trial court regarding those issues, and, on September 20, 2013, the trial court conducted a hearing on the issues. The parties continued to file briefs on the issues following the hearing, and it was not until July 7, 2014, that the trial court entered an order granting the steel companies’ motion to compel arbitration and .ordering the parties to complete arbitration by May 1, 2015. The parties then jointly moved the trial court to alter, amend, or vacate its order only to the extent it set a deadline for the completion of arbitration inasmuch as they were continuing to negotiate regarding ongoing operational difficulties at the Calvert facility and it was possible those negotiations might eventually lead to the resolution of some of the claims asserted in this action.[2] On August 12, 2014, the trial court revised its order as the parties requested, and, on September 16, 2014, Giffels filed its notice of appeal to this Court.
II.
The trial court’s order granting the steel companies’ motion to stay the state-court litigation pending the completion of arbitration effectively compelled Giffels to resolve its claims against the steel companies, and the steel companies’ counterclaims against it, in arbitration as opposed to state court. The standard of review we apply to an order granting a motion to compel arbitration is well settled:
“We conduct a de novo review of a trial court’s order compelling arbitration. Smith v. Mark Dodge, Inc., 934 So.2d 375, 378 (Ala.2006).
“‘The party seeking to compel arbitration must first prove both that a contract calling for arbitration exists and that the contract evidences a transaction involving interstate commerce .... Once this showing has been made, the burden then shifts to the nonmovant to show that the contract is either invalid or inapplicable to the circumstances presented.’
“Smith, 934 So.2d at 378.”
Ritter v. Grady Auto. Grp., Inc., 973 So.2d 1058, 1060-61 (Ala.2007). All parties *6 agree that the governing contracts involve interstate commerce; the only issue before this Court is whether the arbitration provisions in those contracts allowing the steel companies to decide, at their “sole discretion,” whether a dispute arising out of or related to those contracts would be subject to mediation, arbitration, or litigation were rendered “ ‘inapplicable to the circumstances presented,’” Ritter, 973 So.2d at 1061, once the steel companies initially elected to resolve the dispute in litigation and subsequently, Giffels alleges, substantially invoked the litigation process, thereby prejudicing Giffels.
III.
Giffels’s first argument is that, although its contracts with the steel companies allowed the steel companies to unilaterally decide whether any dispute between them and Giffels would be resolved via arbitration or litigation, once the steel •companies made that decision, the decision was irrevocable. We note that Giffels is not arguing that any time a party initiates litigation that party is barred from thereafter exercising a contractual right to arbitrate, as this Court has previously indicated otherwise. See, e.g., Conseco Fin. Corp.-Alabama v. Salter, 846 So.2d 1077, 1081 (Ala.2002) (“Conseco initiated this action; however, the mere filing of a pleading does not constitute a waiver of the right t.o compel arbitration.”). Rather, Giffels is arguing that the specific terms of the arbitration provisions in this case prevent the steel companies from selecting arbitration after initially selecting litigation as a means of resolving a dispute. Giffels articulates this argument as follows in its brief:
“[The steel companies] initiat[ed] a legal proceeding in federal district court, thereby exercising [their] right and selecting litigation as the chosen vehicle for dispute resolution. Nothing in the contract allowed [the steel companies] to later alter [their] selection. Once [the steel companies] selected litigation, the express language of the contract provided that litigation would be the method of dispute resolution for the case. [The steel companies] thereby waived, any right to compel arbitration by exercising [their] contractual discretion to initiate litigation.”
Giffels’s brief, p. 16. The steel companies argue that the language of the arbitration provisions does not limit their right to select how disputes will be resolved and that, in fact, the clear language of the provisions indicates that they might utilize more than one of the three listed methods to resolve any dispute.
In resolving a dispute regarding the meaning of an arbitration provision, “this Court applies the ordinary state-law principles governing contracts.” Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1054 (Ala.2007). Accordingly, we must interpret the terms of the provisions according to their clear and plain meaning. Id. The arbitration provisions at issue in this case provide that “[a]ny dispute arising out of or related to the contracts] shall be subject to mediation, arbitration or the institution of legal or equitable proceedings at the sole discretion of [the steel companies].” Giffels argues that the' use of the disjunctive “or” in the provisions indicates that the steel companies’ choice is mutually exclusive, that is, the steel companies can choose either arbitration or litigation and once they choose one the other is no longer an option. The steel companies, however, argue that “or” is not always used as a disjunctive, but is sometimes used as a conjunctive as well, and that Giffels is effectively reading the word “either” into the arbitration provisions when that word does not appear in those provisions. In Smith v. Hutson, 262 *7 Ala. 352, 78 So.2d 923 (1955), this.Court addressed the meaning of the word “or,” stating:
“Our decision must turn on the meaning and effect of the word ‘or’_Nu-merous decisions from the courts of this country have dealt with this word. 30 Words and Phrases 33. From them we find that it has three common usages: (1) as a disjunctive, (2) as a conjunctive, (3) as an introductory or connective word to an appositive, e.g., ‘a fiddle or violin.’ But we note that in the best considered opinions the primary use of the word is deemed to be as a disjunctive. 30 Words and Phrases 63, 67. Most cases which construe ‘or’ to mean ‘and’ do so to reconcile an ambiguity, rectify an obvious mistake, or carry out the clear meaning of the party or parties who used the word. 30 Words and Phrases 39. See Harris v. Parker, 41 Ala. 604, 615 [ (1868) ]. Some confusion exists in the cases where courts apparently think that the' mere use of the word ‘or’ creates an ambiguity, so they change it to ‘and’ to clarify matters. The practice creates more confusion in the law than it alleviates. '
[[Image here]]
' “We are moved to hold that the word ‘or’ is a disjunctive whless the context in which it was used shows clearly that the contrary was intended and that the petition was not subject to the asserted demurrer.”
262 Ala. at 352, 78 So.2d at 923-24 (emphasis added). In this case, it is apparent from the context that the term “or” was not intended as a disjunctive, but rather as a conjunctive. Importantly, the arbitration provisions here authorized the steel companies to choose between three options: “mediation, arbitration or the institution of legal ... proceedings.” As the steel companies explain in their brief, the inclusion, of mediation as an option is meaningful:
“Here, a construction under which [the steel companies] ha[ve] a single and irrevocable choice of the dispute resolution method — either mediation or arbitration or litigation — is untenable. This becomes clear when considering the ramifications of that construction should [the steel companies] choose mediation. Resolution of a dispute in mediation is inherently .voluntary; parties are not bound to settle a dispute in mediation. See Black’s Law Dictionary .841 (9th ed.2009) (defining mediation as ‘[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution’). Giffels’s construction makes no sense because, if [the steel companies] were'to elect mediation, Giffels could simply refuse to settle the dispute at mediation. If [the steel companies] could not then elect a new method of dispute resolution, [they] would have no ability to seek any relief at all.
“Therefore, the only reasonable construction is"that [the steel companies] could select mediation and, if mediation failed, select again between arbitration and litigation. Based on the plain language of the contract, there is no principled reason to treat litigation or arbitration differently. If [the steel companies] can select mediation and then ‘change [their] mind,’ [they] can also select litigation and then ‘change [their] mind.’
“[The steel companies’] initial election to subject these disputes to a failed federal litigation is directly analogous to a failed mediation. [The steel companies’] first election of litigation in a federal forum was thwarted when it became clear that the federal district court lacked subject-matter jurisdiction. *8 Thus, just as [they] could have done had [they] elected mediation and that mediation failed, [the steel companies] elected an alternative method to resolve the parties’ disputes: arbitration.”
The steel companies’ brief, pp. 31-32.
We agree that the language of the arbitration provisions does not preclude the steel companies from now seeking to resolve their dispute with Giffels in arbitration. That language contemplates the availability of multiple dispute-resolution methods, and, when the steel companies’ initial choice for resolving this dispute failed, they were permitted to make another choice. Certainly, no one would argue that, had the steel companies initially selected mediation and had mediation failed, the parties would be required to commence new mediation proceedings in a different forum ad infinitum until mediation was successful, and the arbitration provisions provide no basis upon which to treat arbitration or litigation differently from mediation. Thus, this case is distinguishable from Triarch Industries, Inc. v. Crabtree, 158 S.W.3d 772, 777 (Mo.2005), the case Giffels primarily relies upon, in which the Supreme Court of Missouri concluded that, “[h]aving elected to commence litigation, [a party] no longer had a contractual right to compel arbitration.” The arbitration provision in Crabtree provided:
“Any controversy or claim arising out of this contract or the breach thereof may, at Seller’s option, be referred to nonbinding mediation under rules of Seller’s choice. If mediation does not result in settlement of the dispute, (or if Seller does not elect to pursue mediation), Seller shall have the right to refer the dispute to binding arbitration under rules of its choice, or to commence litigation.”
158 S.W.3d at 773. This provision expressly stated that, when mediation was not pursued (and it was not in that case), the seller could choose to refer the dispute to arbitration “or” to commence litigation. Presented with this simple binary choice, the Missouri court correctly held “or” to be disjunctive.[3] Unlike in the instant case, there was no context indicating otherwise. See Smith, 262 Ala. at 352, 78 So.2d at 924 (“[T]he word ‘or’ is a disjunctive unless the context in which it was used shows clearly that the contrary was intended_”).
The other cases cited by Giffels in support of its argument that the steel companies had no right to select arbitration once they initiated litigation are also distinguishable based on the specific language used in the arbitration provisions in those cases. In DVI Capital Co. v. Zelch (No. 232732, July 22, 2003) (Mich.Ct.App.2003) (not selected for publication in the Northwestern Reporter), the Court of Appeals of Michigan held that a plaintiff could not select arbitration after initiating litigation, reasoning:
“The guaranties at issue give plaintiff the ‘option’ to resolve claims .arising out of the guaranties ‘either (a) by arbitration ... or (b) in any state or federal court in the State of Michigan.’ We conclude that the trial court’s construction of. the choice of forum clause violates the express terms of the contract by giving plaintiff the right to make one selection and make another selection. *9 The terms ‘either ... or’ do not mean ‘and’ or ‘both’ and do not imply limitless choices. The terms denote a selection of one alternative.”
(Footnotes omitted.) The inclusion of the word “either” in the arbitration provision was crucial to the Michigan court’s analysis, and it cited the following definition of that term from Random House Webster’s College Dictionary (1995): “ ‘Either’ is defined as ‘one or the other of two.’ It is also defined as ‘a coordinating conjunction that, when used with or, indicates a choice.’ ” (Note 7.) Of course, the word “either” is absent from the arbitration provisions agreed upon by the steel companies and Giffels.
Moreover, in Satcom International Group PLC v. Orbcomm International Partners, L.P., 49 F.Supp.2d 331, 338 (S.D.N.Y.1999), the other case cited by Giffels, the United States District Court for the Southern District of New York held that a plaintiff could not move a dispute to arbitration after commencing litigation because the contract did not “permit a party to make the choice between litigation and arbitration a second time for the same dispute, or to jump back and forth between the two options for dispute resolution at its whim or when it meets with an adverse ruling.” However, the arbitration provision in Satcom was structured differently from the ones in this case, and it lacked any context that might allow such a choice. Moreover, it bears repeating that the steel companies are not attempting to remove a case to arbitration on a whim or after receiving an adverse ruling in a court action; rather, the steel companies are now seeking to resolve their dispute with Giffels in arbitration only after the federal district court indicated that it would not decide the matter because it lacked subject-matter jurisdiction — the dispute must move to a new forum regardless of anything the steel companies did.[4] The clear language of the arbitration provisions agreed to by the steel companies and Giffels indicates that the provisions intended to endow the steel companies with the power to decide in what forum disputes arising out of the contracts would be resolved; accordingly, we conclude that the steel companies’ contractual right to select arbitration was still effective when it became necessary to select a new forum.
IV.
Giffels next argues that, even if its contracts with the steel companies gave the steel companies the right to select arbitration following the dismissal of its action by the federal district court, they nevertheless have waived that right by substantially invoking the litigation process and thereby prejudicing Giffels. This Court has stated:
“ ‘It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. *10 No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.’
“Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1996).
“ ‘In order to demonstrate that the right to arbitrate a, dispute has been waived, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration.’
“SouthTrust Bank v. Bowen, 959 So.2d 624, 683 (Ala.2006) (some emphasis omitted). ‘Because there is a strong federal policy favoring arbitration, waiver of the right to compel arbitration is not lightly inferred,, and the party seeking to prove waiver has a “heavy burden.” ’ Aurora Healthcare, Inc. v. Ramsey, 83 So.3d 495, 500 (Ala.2011) (quoting Paragon Ltd. v. Boles, 987 So.2d 561, 564 (Ala.2007)); ‘Additionally, ¿s this Court has consistently noted: “[Tjhere is a presumption against a court’s finding that a party has waived the right to compel arbitration.”’ Bowen, 959 So.2d at 633 (quoting Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 103 (Ala.1997)).”
Anderton v. Practice-Monroeville, P.C., 164 So.3d 1094, 1099 (Ala.2014). As an initial matter, we note that the parties disagree with regard to what extent the steel-companies actually invoked the litigation process. Giffels argues that-all the actions taken by the steel companies in the federal-district-court action are relevant; the steel companies argue that the instant state-court action is a different proceeding entirely and that in this action they have filed only pleadings and motions regarding their right to arbitrate the underlying dispute. However, it is ultimately .unnecessary for us to address this issue because Giffels, as the party attempting to establish waiver, has the burden of establishing both that the steel companies substantially invoked the litigation process and that Gif-fels would be substantially prejudiced by now -being required to submit to arbitration. As explained below, Giffels has not demonstrated the required prejudice, and we accordingly hold, on that basis, that there has been no waiver of the right to arbitrate -even if we were to assume that the steel companies had substantially invoked the litigation process.
In its brief to this Court, Giffels summarized its argument that it would be substantially prejudiced if it were now required to submit to arbitration:
“As a result of these actions, [i.e., the steel companies’ actions in the fedei-al district court,] Giffels was substantially prejudiced. First, the institution of legal proceedings required Giffels' to file its compulsory counterclaim in federal court. Further, in order to comply with the exacting time limits for disclosures in federal court, Giffels expended over $80,000 for document production. Gif-fels was also required to expend time and money in responding to more than one complaint, and to fight the jurisdictional issue in opposition to [the steel companies’] tenacious assertion of federal court jurisdiction.
“All of these actions resulted in the expenditure of time and money that would not have occurred, or would have at least been substantially lessened if [the steel companies] had not first initiated litigation, pursued it for over a year and a half, and then, despite Giffels’s opposition, filed a demand for arbitration. [The steel companies’] actions have gone so far as to force Giffels to *11 respond to both the litigation and the arbitration filed by [the steel companies], as despite Giffels’s objections the arbitration proceeding has moved forward.”
Giffels’s brief, p. 40. Thus, Giffels argues generally that it expended a great deal of time and money with regard to the pleadings filed in the federal district court and additional filings necessary to address the jurisdictional issue raised by that court, as well as additional time and money in association with the ongoing arbitration and the dispute over whether arbitration was proper. It further specifically argues that it expended over $80,000 in order to comply with the initial discovery requirements applicable in federal court by virtue of Fed.R.Civ.P. 26(a)(1).
In Aurora Healthcare, Inc. v. Ramsey, 88 So.3d 495, 500-02 (Ala.2011), this Court considered similar arguments'made by a party attempting to establish the substantial-prejudice prong of the arbitration-waiver test:
“Beginning our analysis with the second question — whether the opposing party would be substantially prejudiced — we conclude that [the appellee] has failed to carry her ‘heavy burden’ of establishing substantial prejudicé caused by the defendants’ belated invocation of the arbitration agreement. [The appel-lee] stated in her opposition to the defendants’ motion to compel arbitration that she had ‘incurred considerable attorney fees and expenses as a result of the Defendants’ participation in the litigation process.’ [The appellee] stated that her - counsel’s activities included ‘preparing discovery and responses to discovery, ... legal research, ... phone conferences and making, court appearances in Wilcox and Jefferson County Circuit Courts.’
“The circuit court’s June 28, 2010, order likewise states that [the appellee] had conducted ‘legal research; argument in opposition to transferring venue; preparing and filing a petition for writ of mandamus with the Alabama Supreme Court [related solely to venue]; responding to several motions to dismiss and strike; preparing and filing an .Amended Complaint; preparing discovery and responding to discovery; participating in phone conferences; and ... making court appearances.’ These assertions are not supported by any faetu- . al evidence in the record.
“In Hales v. ProEquities, Inc., 885 So.2d 100 (Ala.2003), this-Court stated the factors most significant in determin-. ing whether the party opposing arbitration will be prejudiced if ordered to arbitrate. One factor is • whether ‘ “the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration.was designed to alleviate.”’ 885 So.2d at 105-06 (quoting Morewitiz v. West of England Ship Owners Mut. Prot. & Indem. Ass’n, 62 F.3d 1356, 1366 (11th Cir.1995)). Another is whether the party seeking arbitration ‘ “took advantage of judicial discovery procedures not available in arbitration.’” Hales, 885 So.2d at 106 (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968)).
“In its June 23, 2010; order, the circuit court reproduced a timeline of events that was initially produced by [the ap-pellee] in her filing in opposition to the motion to compel arbitration. The time-line purportedly demonstrates the extent to which the defendants substantially invoked the litigation process. The timeline shows that much of [the appel-lee’s] costs were incurred litigating the issue of venue. ■ The incurring of those costs, however, cannot constitute preju *12 dice in light of this Court’s holding that ‘[a] defendant has the right to have the proper venue established before it has any obligation to move to compel arbitration.’ Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala.1999).
“The litigation activities conducted between April 2006, when the case was transferred to the Jefferson Circuit Court, and November 2006, when the motion to compel arbitration was filed, were primarily discovery oriented. The Code of Procedure of the National Arbitration Forum, expressly incorporated into the arbitration agreement allegedly executed by [the appellee] ..., at Rule 6 requires arbitrating parties to submit available documents in support of, or in opposition to, all claims. Little, if any, discovery appears to have been conducted of the sort that suggests that the defendants ‘ “took advantage of judicial discovery procedures not available in arbitration.” ’ Hales, 885 So.2d at 106 (quoting Carcich, 389 F.2d at 696 n. 7). See also Ryan’s Family Steakhouse, Inc. v. Kilpatric, 966 So.2d 273, 284 (Ala.Civ.App.2006) (noting that participating in discovery permitted under rules specified in the arbitration agreement between the parties does not constitute prejudice)....
“The record reflects that much of [the appellee]’s time expended in litigation after November 2006 was devoted to opposing arbitration. Expenses incurred by the party opposing arbitration are not considered prejudicial. A holding to the contrary would result in the absurdity that every party opposing arbitration can immediately allege prejudice on the mere ground that the party opposed it.
“[The appellee’s] motion in opposition to arbitration presented only conclusory assertions that she had incurred litigation costs. Her motion was not accompanied by an affidavit or by any other evidence in support of the allegation that she would be prejudiced by being compelled to arbitrate her claims. [The appellee] did not even allege how many hours her counsel had spent in litigation matters or the amount of fees or expenses incurred in such matters. Alabama caselaw shows' that a party alleging prejudice is unlikely to prevail without presenting supporting evidence. See, e.g., SouthTrust Bank v. Bowen, 959 So.2d [624,] 633 [ (Ala.2006) ] (holding that the plaintiff opposing arbitration failed to meet his ‘heavy burden’ when he provided no evidence supporting his allegation that he would be prejudiced by being compelled to arbitrate). See also Ex parte Greenstreet, Inc., 806 So.2d 1203, 1209 (Ala.2001) (‘If [a] party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration.’). Thus, in Ryan’s Family Steakhouse, Inc. v. Kilpatric, 966 So.2d at 284, the court found no prejudice where the record contained no evidence supporting the allegations of the plaintiff, who opposed arbitration, that she had expended significant time and resources responding to discovery propounded by the party seeking arbitration.”
(Footnotes omitted.) Like the appellee in Aurora Healthcare, Giffels has made general assertions that it expended time and money on litigation activities; however, with one exception, it has failed to quantify or submit specific evidence of that time and expense. “Alabama caselaw shows that a party alleging prejudice is unlikely to prevail without presenting supporting evidence.” 83 So.3d at 501. Moreover, to the extent Giffels urges us to consider as evidence of prejudice the time and expense that were presumably spent litigating the *13 jurisdictional and arbitration issues, Aurora Healthcare and the cases cited therein indicate that incurring costs in association with litigating the issue of proper venue or the issue of arbitration itself cannot constitute prejudice that would support an ultimate finding of waiver. Id.
The only specific evidence submitted by Giffels to support its claim of prejudice is an affidavit and invoices establishing that Giffels incurred approximately $80,000 in expenses to digitize and copy records that were part of its initial disclosure to the steel companies in the federal action pursuant to Rule 26(a)(1), Fed.R.Civ.P. Indeed, it is apparent that Giffels’s claim of prejudice relies almost entirely on this evidence.[5] At the hearing held by the trial court on the steel companies’ motion to stay the litigation and compel arbitration proceedings, Giffels’s attorney effectively stated as much, saying:
“Now, [the steel companies’ attorney] talked about the second factor that is to be addressed is the prejudice argument. Judge, the prejudice here is very clear. And we have discussed in our brief that it is Giffels’s contention that the prejudice actually arises from complying with the initial disclosure requirement of the federal rules.”
In its reply brief filed with this Court, Giffels also referred to this $80,000 expense as “the one overwhelming cost to Giffels that occurred in this cage [that] cannot be minimized.” Giffels’s reply brief, p. 32. However, while $80,000 may be a substantial expense,- it is not clear that Giffels would be prejudiced in any way if now forced to submit to arbitration, because the disclosures required by the Federal Rules of Civil Procedure would presumably still be required in arbitration based on the provision in the contracts stating that, “[u]nless otherwise agreed by the parties, during the arbitration proceedings discovery shall be available and shall be conducted in accordance with the rules of discovery set forth in the U.S. Federal Rules of Civil Procedure in effect at such time.” Aurora Healthcare, 83 So.3d at 501, and Ryan’s Family Steakhouse, Inc. v. Kilpatric, 966 So.2d 273, 284 (Ala.Civ.App.2006), clearly indicate that time and money expended on discovery while in litigation will not be considered evidence of prejudice if that same discovery would be permitted in arbitration based on rules specified in the relevant arbitration provision. That is precisely the case here— discovery completed in both the federal-district-court action and the arbitration proceedings was/is governed by the Federal Rules of Civil Procedure.[6]
Citing Paw Paw’s Camper City, Inc. v. Hayman, 973 So.2d 344 (Ala.2007), Giffels nevertheless argues that it is possible that an arbitrator would have modified the discovery requirements and that its expenses *14 might have accordingly been lessened if the steel companies had moved to compel arbitration earlier.'. In Paw Paw’s Camper City, this Court stated:
. “Having found that there has been a substantial invocation of the litigation process, we now address the issue of prejudice. The [plaintiffs] point out that ‘[t]he pure cost to the plaintiffs, just for •the [four] depositions, has been more than $1650.’ The sellers criticize the [plaintiffs’] statement that they have expended $9,400 in this litigation, for its lack of specificity in identifying additional costs that would not have been incurred in arbitration. The sellers hypothesize in their brief to this Court that ‘the minimal discovery which was conducted prior to [the sellers’] seeking to compel arbitration would also have been conducted in arbitration.’ The sellers offer no authority for the proposition that we may take judicial notice of their speculation that an arbitrator in this proceeding would have allowed the same degree of discovery that took place in the Mobile Circuit Court before the sellers filed their motion to compel arbitration, and we decline to do so. For all that appears, the arbitrator would have exercised its discretion in favor of allowing no discovery.”
973 So.2d at 349. Thus, the Paw Paw’s Camper City Court declined to speculate that an arbitrator would allow the same discovery the trial court had allowed, and Giffels urges us' to do the same now. However, Giffels fails to recognize a crucial difference in the instant case; namely, that the arbitrator is required by the terms of the arbitration provisions to manage discovery pursuant to the Federal Rules of Civil Procedure — just as was the federal district court in the previous litigation. Indeed, the contracts agreed to by Giffels and the steel companies provide that “[a]ny refusal to allow such discovery [i.e., discovery permitted by the Federal Rules of Civil Procedure,] shall be specifically enforceable in court by the aggrieved party, and the arbitration proceeding shall be stayed pending resolution of the court proceeding.” Thus, we do not need to speculate whether the arbitrator in this case would have required the initial disclosures as the federal district court did because the Federal Rules of Civil Procedure that required those disclosures would guide the process in both forums, in marked contrast to the arbitrator in-Paw Paw’s Camper City, who apparently was not bound by any guidelines and accordingly had discretion to declare there would be no discovery at all. This case is therefore clearly more akin to Aurora Healthcare, 83 So.3d at 501, in which the discovery conducted in pre-arbitration litigation was essentially the same as would be permitted by the applicable National Arbitration Forum’s Code of Procedure, and Ryan’s Family Steakhouse, 966 So.2d at 284, in which' the' discovery conducted in pre-arbittation litigation was also specifically allowed under rules set forth in the arbitration agreement. In sum, it is clear that the steel companies have not taken advantage of discovery procedures in litigation that would not have been available to them in arbitration and that Giffels’s expenses related to the initial disclosures are not the type of litigation expenses that arbitration would have alleviated. See Hales v. ProEquities, Inc., 885 So.2d 100, 105-06 (Ala.2003) (noting that sufficient prejudice to infer waiver has been found when parties avail themselves of judicial discovery procedures not available in arbitration or when opposing parties have been forced to incur litigation expenses that arbitration was designed to avoid).
This Court has previously stated that “[i]n interpreting an arbitration provision, ‘any doubts concerning the scope of arbi- *15 trable issues should be resolved in favor of arbitration, whether the problem at hand is, the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.’ ” Dunes of GP, L.L.C. v. Bradford, 966 So.2d 924, 927 (Ala.2007) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Cbrp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis omitted; emphasis added)). In light of this principle and the heavy burden borne by Giffels, we cannot conclude, even assuming for the sake of argument that the steel companies substantially invoked the litigation process by commencing litigation in the federal district court and seeking arbitration only after it became clear that the federal district court lacked subject-matter jurisdiction, that Giffels would be substantially prejudiced if required to proceed in arbitration. Accordingly, we hold that the steel companies have not waived their right to arbitration. and that the trial courts order staying the action.until arbitration was completed was proper.
V.
Giffels initiated this action in the trial court after the steel companies commenced arbitration proceedings once it became apparent that the action the steel companies had initiated in the federal district court involving the same contractual dispute would be dismissed for lack' of subject-matter jurisdiction. The trial court thereafter granted the steel companies’ motion to stay the action pending the completion of arbitration, and Giffels appealed, arguing that, under the circumstances, the steel companies either had no -right to compel arbitration or had waived that right. However, the language of the arbitration provisions in the contracts executed by the parties gave the steel companies the broad right to select arbitration as a method to resolve any disputes based on those contracts, and, because Giffels has failed to demonstrate substantial prejudice as a result of the steel companies’ actions, we hold that the steel companies did not waive their right to proceed in arbitration. Accordingly, the order of the trial court sending the case to arbitration and staying all proceedings pending the completion of the arbitration of the claims presented in this action is affirmed.
AFFIRMED.
BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK and SHAW, JJ., concur in the result.
MOORE, C.J., dissents.

. "[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing.” Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 569-70, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004).

. Giffels noted in the joint motion to alter, amend, or vacate that it was not conceding that the trial court's order granting the steel companies' motion to stay the action and compel arbitration was proper, or waiving its right to subsequently appeal that order.

. The Supreme Court of Missouri further noted that the party seeking arbitration in Triarch, "[o]nce faced with [the defendant's] counterclaim and discovery requests, ... apparently regretted that choice [to litigate] and wanted to refer the dispute to binding arbitration instead.” 158 S.W.3d at 777. In contrast, the steel companies elected to pursue arbitration only after it became clear that the federal district court lacked subject-matter jurisdiction to hear the steel companies’ dispute with Giffels and would be dismissing the action.

. We further note that any concern that a party will abuse a contractual right to select arbitration by exercising it only when it becomes displeased with the course of litigation is generally mitigated by the principle, discussed infra, that a party waives its right to arbitration by substantially invoking the litigation process to the detriment of the opposing party.

. Giffels has also made a general argument that it has been prejudiced by the steel companies’ delayed invocation of their right to compel arbitration based simply on the time that has elapsed since litigation of the dispute began. However, Giffels fails to explain how the passage of time alone has prejudiced it. We further note that this Court has previously affirmed orders compelling arbitration in which the parties engaged in litigation for a longer period than in this case. See, e.g., Jericho Mgmt., Inc. v. Fidelity Nat’l Title Ins. Co. of Tennessee, 811 So.2d 514, 515 (Ala.2001) (affirming order compelling arbitration in which appellee did not move to compel arbitration until 19 months after commencement of litigation),

. One might argue that Giffels would suffer more prejudice if this dispute is resolved in the trial court, because the Alabama Rules of Civil Procedure do not contain an initial-disclosure requirement equivalent to Rule 26(a)(1), Fed.R.Civ.P. Thus, if this dispute is ultimately tried in the trial court, the identified $80,000 might have been spent in vain.