SELLERS, Justice.
Bridgestone Americas Tire Operations, LLC, d/b/a GCR Tires & Service ("Bridgestone"), appeals from a judgment of the Tuscaloosa Circuit Court denying Bridgestone's motion to compel arbitration of an employment-related dispute. We reverse the trial court's judgment.
I.
The record indicates that Ottis Adams began working as a sales representative for Bridgestone or a related entity in May 2006 and that he resigned or his employment was terminated in August 2016. It is not entirely clear what entity actually hired Adams in 2006. One affidavit Bridgestone submitted to the trial court implies that Bridgestone hired Adams. Another affidavit and other materials, however, suggest that Adams was hired by an entity called BFS Retail and Commercial Operations, LLC ("BFS"). For his part, Adams asserts that he was hired by BFS in 2006 but that he was an employee of Bridgestone when his employment ended in 2016.
Bridgestone submitted materials to the trial court indicating that, when Adams was hired in 2006, BFS was conducting business under the name GCR Tires & Service. Those materials also indicate that, in 2008, Bridgestone began using the GCR Tires & Service name and that, at that time, Bridgestone and BFS were owned by the same corporate parent. BFS changed its name in 2009, but the newly named entity and Bridgestone remained owned by the same corporate parent. Thus, it appears that, although Adams may have changed employers, his new employer was an affiliate, a related company, or a sister company of BFS.
At some point at or around the time he was hired, Adams signed a document entitled "New Employee Agreement and Acknowledgment of the Bridgestone/Firestone, Inc. Employee Dispute Resolution Plan" ("the agreement"), which states that Adams agreed to the terms of the employee-dispute-resolution plan, which is fully titled "BFS Retail & Commercial Operations, LLC, Employee Dispute Resolution Plan" ("the EDR Plan"). The agreement states further that Adams waives his right to resolve disputes covered by the EDR Plan through means other than those set forth in the EDR Plan.
The EDR Plan contains an arbitration provision. Although Adams argues that another provision in the EDR Plan excludes the claims he now asserts from arbitration, he concedes that parties who are bound by the plan "agreed to submit most employment disputes to arbitration."[1]
*836 After leaving Bridgestone in 2016, Adams became employed by McGriff Tire Company, Inc. ("McGriff"). At some point thereafter, McGriff's principal, Barry McGriff, received a letter written on the letterhead of Bridgestone's corporate parent. The letter asserted that Adams had signed a noncompetition and nonsolicitation agreement with his previous employer, that his employment with McGriff violated that agreement, and that Adams allegedly had violated a duty of loyalty by selling tires for McGriff while still employed by Bridgestone. The letter also suggested that Adams may have disclosed, or might disclose, "confidential information and trade secrets." The letter stated that Bridgestone was planning to commence legal action against Adams and concluded with a suggestion that McGriff might be named as a defendant in that action if the matter was not resolved. Adams asserts that, because of the accusations in the letter, McGriff terminated his employment.
Adams sued Bridgestone and related entities. In his complaint, he alleged that Bridgestone or a related entity had interfered with his business relationship with McGriff and had defamed him via the letter to Barry McGriff. Adams subsequently voluntarily dismissed all defendants except Bridgestone.
Bridgestone filed an answer and a counterclaim. In its counterclaim, Bridgestone averred that Adams, while still employed by Bridgestone, had taken actions for McGriff's benefit and had "feigned acceptance" of an employment agreement he never actually signed that included a noncompetition provision.[2] Although Bridgestone did not mention arbitration or the EDR Plan in its answer or counterclaim, approximately three months after filing those pleadings, it amended its answer to assert arbitration as a defense, and it filed a motion to compel arbitration of all claims pursuant to the terms of the EDR Plan. The trial court denied Bridgestone's motion to compel, and Bridgestone appealed.
It appears that, after Bridgestone appealed, Adams attempted to proceed with further discovery. Bridgestone filed a motion requesting the trial court to enter an order staying further discovery pending appeal, which Adams opposed. The trial court denied Bridgestone's motion to stay.
II.
"This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id.'[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'
*837 Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted). It is undisputed that the EDR Plan contains an arbitration provision and that the plan evidences a transaction affecting interstate commerce. The dispute is whether the arbitration provision applies to the claims asserted in this action.[3]
III.
Initially, Adams points out that the agreement states that disputes that might arise between himself and BFS are subject to the arbitration provision in the EDR Plan. Adams has asserted that he was hired in 2006 by BFS and that, when his employment ended in 2016, he was working not for BFS but for Bridgestone. Although Adams concedes that BFS was a party to the agreement, which provides that disputes are to be resolved pursuant to the EDR Plan, he argues that the agreement applies only to any disputes he might have with BFS and that Bridgestone cannot enforce it.
In addition to providing that disputes with BFS are subject to the EDR Plan, however, the agreement also states that the EDR Plan "fully defines the disputes that are covered"; that Adams agreed that he "must submit all disputes covered by the EDR Plan to mediation and, if necessary, to final and binding arbitration under the terms of the EDR Plan"; that Adams entered into an "agreement to be bound by the EDR Plan"; and that Adams "waive[d] any right ... to resolve disputes covered by the EDR Plan through any other means." The agreement also confirms that Adams had been given a copy of the EDR Plan and an opportunity to review it before he signed the agreement. We conclude that Bridgestone demonstrated to the trial court that Adams agreed to resolve, pursuant to the terms of the EDR Plan, all disputes covered by that plan, not just disputes with BFS. Even if the agreement is deemed ambiguous, "[i]n the event of an ambiguity or uncertainty over the applicability of an arbitration clause, federal policy dictates that it be resolved in favor of arbitration." Koullas v. Ramsey, 683 So.2d 415, 417 (Ala. 1996).
The EDR Plan provides that it is binding on "Employees" and "the Company" and that it governs disputes between "Employees" and "the Company." The term "Employee" is defined as "any applicant for employment, current employee or former employee of the Company." The term "Company" is defined broadly to include, among other entities and individuals, BFS; BFS's sister companies; BFS's related companies; BFS's affiliate companies; and the successors and assigns of each of the foregoing entities. As noted, the materials submitted by Bridgestone indicate that, in 2008, the GCR Tires & Service name was transferred from BFS to Bridgestone and that, at that time, Bridgestone and BFS were owned by the same corporate parent. BFS changed its name in 2009, but the newly named entity and Bridgestone remained owned by the same corporate parent. We conclude that Bridgestone has demonstrated that it fits within the definition of "the Company" as that term is used in the EDR Plan and that Adams agreed that his disputes with Bridgestone would be resolved pursuant to the terms of the EDR Plan. Thus, even if Bridgestone is, as Adams suggests, not a party to the agreement, which provided that disputes would be resolved pursuant to the EDR Plan, *838 Bridgestone is entitled to enforce the agreement. See Ex parte Stamey, 776 So.2d 85, 92 (Ala. 2000) (holding that, pursuant to a third-party-beneficiary theory, a nonsignatory could enforce an arbitration agreement against a signatory because the agreement specifically stated that the signatory had agreed arbitrate disputes against the nonsignatory). Cf. First Family Fin. Serv., Inc. v. Rogers, 736 So.2d 553, 560 (Ala. 1999) (suggesting that a nonsignatory affiliate of a signatory to an arbitration agreement would have been entitled to enforce the agreement, which provided that disputes against the signatory's affiliates were subject to arbitration).
IV.
The EDR Plan provides that it "is the exclusive, final and binding means by which Disputes can be resolved." Adams concedes that parties bound by the EDR Plan "agreed to submit most employment disputes to arbitration." The EDR Plan defines "dispute," in relevant part, as follows:
" 'Dispute' means a legal claim between persons bound by the EDR Plan which relates to, arises from, concerns, or involves in any way:
"1. This EDR Plan;
"2. The employment of an Employee, including the application for and the initiation, terms, conditions, or termination of such employment;
"3. Any other matter arising from or concerning the employment relationship between the Employee and the Company including, by way of example and without limitation:
"....
"Tort claims such as defamation, intentional or negligent infliction of emotional distress, assault, battery, conversion, invasion of privacy and other personal injury claims ...."
As noted, Adams claims that Bridgestone sent Barry McGriff a letter accusing Adams of breaching a noncompetition agreement and the duty of loyalty and suggesting that Adams may have disclosed, or might disclose, trade secrets. Adams also asserted in his complaint that Bridgestone "threatened McGriff ... that if it failed to terminate [Adams], ... [Bridgestone] would add McGriff ... as a defendant to the lawsuit [it] was preparing and would file against [Adams]." Based on those actions, Adams alleged against Bridgestone defamation and interference with his business relationship with McGriff.
Adams has conceded that, but for an exclusion that appears in the EDR Plan, all claims asserted in this matter would qualify as disputes that are subject to the EDR Plan's arbitration provision.[4] The exclusion upon which Adams relies provides that, "[n]otwithstanding anything to the contrary in the EDR Plan, the EDR Plan does not apply to ... claims with respect to allegations of trade secret violations and breach of non-competition provisions and agreements." The parties state in their briefs to this Court that "claims," as used in the exclusion, means "legal claims."
Neither party has asserted claims of trade-secret violations or breach of a noncompetition agreement. Adams's claims, however, rely on Bridgestone's allegedly false representations to McGriff that Adams had breached a noncompetition agreement and that he may have disclosed, or might disclose, trade secrets. Thus, *839 Adams argues, his claims are "claims with respect to allegations of" trade-secret violations and breach of noncompetition provisions.
We disagree, however, with Adams's assertion that the exclusion unambiguously applies to his claims. At most, the use of the phrase "with respect to" in the exclusion renders the exclusion ambiguous as to whether it applies only to claims alleging trade-secret violations or the breach of noncompetition agreements, or also to claims, such as Adams's, that are aimed at recovering compensation for allegedly false accusations that a noncompetition agreement has been breached or trade secrets disclosed. As noted, an uncertainty or ambiguity over the applicability of the arbitration provision is to be resolved in favor of arbitration. In SSC Selma Operating Co. v. Fikes, 238 So.3d 635, 637 (Ala. 2017), this Court concluded that a provision in an arbitration agreement excluding from the operation of the agreement any dispute that "relate[d] to worker's compensation" did not apply to an employee's claim alleging retaliation for seeking worker's compensation benefits. Although, as Adams points out, the Court in SSC Selma concluded that the parties to the arbitration agreement had intended to exclude from its operation disputes that are governed by statute and that are not subject to a jury trial (such as workers' compensation claims but not retaliatory-discharge claims), the Court also noted as an alternative rationale that, "[i]n the event of an ambiguity or uncertainty over the applicability of an arbitration clause, federal policy 'dictates that it be resolved in favor of arbitration.' " Id. at 638 (quoting Koullas v. Ramsey, 683 So.2d 415, 417 (Ala. 1996) ). The exclusion with which we are concerned in the present case is at least as ambiguous as the exclusion at issue in SSC Selma. We resolve that ambiguity in favor of arbitration and conclude that Adams's claims are arbitrable.[5]
V.
Adams argues that, by participating in litigation, Bridgestone waived any right it had to arbitrate. That issue is subject to de novo review. Hales v. ProEquities, Inc., 885 So.2d 100, 105 (Ala. 2003).
" 'It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring *840 it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.'
" Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala. 1995)."
Hales, 885 So.2d at 105. "[T]here is a presumption against a court's finding that a party has waived the right to compel arbitration." E. Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 103 (Ala. 1997). "[A]ny party seeking to establish such a waiver bears a heavy burden." Hoover Gen. Contractors-Homewood, Inc. v. Key, 201 So.3d 550, 553 (Ala. 2016). Adams candidly acknowledges that arguments asserting that a party has waived the right to arbitrate by participating in litigation are not favored.
Bridgestone filed an answer and a counterclaim approximately three months before it filed a motion to compel arbitration. Bridgestone also responded to Adams's initial interrogatories and requests for production before it filed a motion to compel arbitration. However, " '[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver [of the right to arbitrate].' " Hoover Gen. Contractors-Homewood, 201 So.3d at 554 (emphasis omitted) (quoting Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216, 1219 (Ala. 2001) ). Adams has not demonstrated that Bridgestone's filing a counterclaim, responding to Adams's initial discovery requests, and waiting approximately three months after answering Adams's complaint and asserting a counterclaim to move to compel arbitration constitutes a substantial invocation of the litigation process that substantially prejudiced Adams.[6]
Adams also points out that, after the trial court denied Bridgestone's motion to compel arbitration, Bridgestone served Adams with interrogatories and requests for production. It is uncontested, however, that, in opposing Bridgestone's previously filed motion to stay discovery pending appeal, Adams represented to the trial court that moving forward with discovery would "expedite the arbitration process" in the event this Court were to reverse the trial court's judgment. He cannot now take the position that requiring him to submit to arbitration after participating in such discovery would cause him substantial prejudice.
Finally, the parties suggest that, before Bridgestone moved to compel arbitration, the parties voluntarily participated in what Adams describes as "court-approved" mediation. Adams, however, has not demonstrated that Bridgestone's participation in that mediation bespeaks an intention to abandon its right to arbitrate under the EDR Plan, which itself calls for mediation, or that Adams will be substantially prejudiced if Bridgestone's motion to compel arbitration is granted after Bridgestone and Adams have participated in unsuccessful mediation.[7]
*841 VI.
Based on the foregoing, we conclude that the trial court erred in denying Bridgestone's motion to compel arbitration pursuant to the terms of the EDR Plan. Accordingly, its judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Shaw, and Wise, JJ., concur.

Generally speaking, the EDR Plan requires disputes to be submitted to mediation and, if mediation is not successful, then to arbitration. The parties suggest that they have already participated in mediation, although not strictly pursuant to the procedure identified in the EDR Plan. Rather, Adams asserts that he and Bridgestone participated in mediation "through the [trial-court] approved process." As discussed infra, Adams argues that Bridgestone's participation in "court-approved" mediation constitutes invocation of the litigation process for purposes of determining whether Bridgestone has waived its right to arbitrate, but there has been no further discussion of whether the mediation should affect this Court's analysis.

The employment agreement Adams did not sign is a separate instrument from the agreement, which Adams did sign when he was hired.

There has been no argument that an arbitrator, and not a court, should resolve issues of arbitrability.

It is undisputed that Bridgestone's counterclaims are covered by the EDR Plan and are not excluded from arbitration under the plan.

Porter v. Williamson, 168 So.3d 1215 (Ala. 2015), upon which Adams relies, does not call for a different result. In that case, a shareholder's agreement required certain closely held companies to repurchase the shares of "terminated or retiring shareholder[s]." 168 So.3d at 1216. One such shareholder demanded the companies repurchase his shares, but the parties could not agree on a price. The shareholder sued the companies and the other shareholders, demanding specific performance of the shareholder's agreement. The defendants moved to compel arbitration. There was, however, a provision in the applicable arbitration agreement that excluded from its operation those actions for specific performance of the shareholder's agreement " 'in the event of any controversy concerning the purchase or sale of [shares].' " 168 So.3d at 1217. This Court held that the shareholder's action clearly was one demanding specific performance and that it was a controversy concerning the purchase or sale of shares. Unlike in Porter, the language used in the exclusion with which the Court is concerned in the present case is at least ambiguous.

Bridgestone's failure to assert an arbitration defense in its answer was not a waiver of its right to arbitrate. Hoover Gen. Contractors-Homewood, 201 So.3d at 553 ("[A] party's failure to assert the existence of an arbitration clause in an initial pleading does not irrevocably bar that party from subsequently invoking that clause.").

Also in support of his waiver argument, Adams points out that one of Bridgestone's attorneys, who is licensed to practice law in another state, took steps necessary to appear in this action in defense of Bridgestone. That action, however, does not constitute a substantial invocation of the litigation process by Bridgestone so as to suggest a waiver of the right to arbitrate. Adams also points out that Bridgestone served nonparty subpoenas on McGriff. Adams, however, has not demonstrated that Bridgestone's serving those subpoenas substantially prejudiced Adams. Finally, Adams suggests that he will be prejudiced by the granting of Bridgestone's motion to compel arbitration because, he claims, the terms of the EDR Plan are unfavorable to him. The alleged unfairness of the EDR Plan, however, has no bearing on whether Bridgestone waived its right to arbitrate by participating in litigation.